Department of Commerce • National Oceanic & Atmospheric Administration • National Marine Fisheries Service

| |
|---|
| ***NATIONAL MARINE FISHERIES SERVICE INSTRUCTION 30-123-01*** <br> ***MARCH 1, 2005*** |
| ***Administration and Operations*** <br> ***Administrative Records Guidelines*** |
| ***GUIDELINES FOR AGENCY ADMINISTRATIVE RECORDS*** |

**NOTICE:** This publication is available at:  http://www.nmfs.noaa.gov/directives/.

**OPR:** GCF (S. Rauch)                    **Certified by:** F/ (W. Hogarth)

**Type of Issuance:** Initial

*SUMMARY OF REVISIONS:*


Signed _____

[Approving Authority name]                    Date

[Approving Authority title]

# NOAA FISHERIES

# Guidelines for
# Agency Administrative Records

March 2005

**Table of Contents**

I.   INTRODUCTION ...................................................................................................................1

II.  ADMINISTRATIVE RECORDS ........................................................................................1

    A.  Documents to Include in an Administrative Record.......................................................4
    B.  Documents Not to Include in an Administrative Record ...............................................6
    C.  Organizing and Indexing an Administrative Record for Litigation ..............................9
    D.  Potential Consequences of Incomplete Administrative Record in Litigation . . . . . . .10
    E.  Interplay between FOIA and an AR .............................................................................10

III. FEDERAL RECORDS REQUIREMENTS ........................................................................11

IV.  FREEDOM OF INFORMATION ACT ..............................................................................12

    APPENDIX A.  Magnuson-Stevens Act Administrative Records .................................................14

## I.  INTRODUCTION

NOAA Fisheries keeps records for three separate purposes.  First, the agency must maintain records to protect the public interest in government documents and materials.  Second, the agency for its own business purposes, and occasionally for public viewing, keeps a docket of information relating to a specific decision.  Third, when a NOAA Fisheries decision is challenged in court, the agency must produce a subset of these documents to the court.

The Guidelines focus primarily on aiding NOAA Fisheries program managers and record officers in the latter type: producing for a court accurate, reliable and complete administrative records that support agency decisions, records often subject to production under tight deadlines. The discussion of administrative records is followed by a brief description of the federal record laws, which require maintenance of records other than those included in administrative records, and the Freedom of Information Act, which applies to all federal records whether or not they are included in an administrative record.

## II.  ADMINISTRATIVE RECORDS

The term "administrative record" can be used to mean a compilation of documents[1] that the agency maintains to track its decision-making process, or it can mean the subset of those documents that is compiled and produced to a court to demonstrate the decision-making process and the basis for a final agency decision.[2]   The Guidelines will use "administrative record" (AR)

---

[1]  The legal term for all agency materials is "records."  "Records" are defined in 44 U.S.C. § 3301 as:

> all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them.  Library and museum material made or acquired and preserved solely for reference or exhibition purposes, extra copies of documents preserved only for convenience of reference, and stocks of publications and of processed documents are not included.

To avoid confusion of the term "record" with the term "administrative record", these Guidelines use the word "documents" to refer to individual records, specifying as necessary records other than paper documents.

[2]   As discussed in Section III below, agencies are required to create and retain documents in order to recognize and protect the public's interests in government records.

1

to refer to the record produced for litigation, and "docket" to describe the record maintained by the agency to document the development of a specific agency decision.[3]  Many documents that would not be included in an AR should still be maintained in a docket, and pursuant to federal record-keeping requirements.  This section of the Guidelines focuses on producing ARs for litigation.

When an agency decision is challenged, the Administrative Procedure Act (APA)[4] provides that a court review an agency's action to determine if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  Most cases challenging agency decisions are decided on summary judgment, that is, without a trial in which there is witness testimony.  The AR is the government's "evidence" in the case, evidence that would otherwise be gathered through presentation of witnesses and exhibits to the court.  The court therefore relies solely on the agency's AR to determine the legal adequacy of the particular agency action being challenged.  Accordingly, the agency should present an AR that demonstrates compliance with procedural requirements and the full rationale for the agency's decision.

Neither the APA nor any of NOAA's statutes or directives provide further guidance on the specific contents of an AR.  The content has been addressed, however, in numerous court decisions.  These guidelines have been adapted from those decisions and guidance provided from the Environmental Protection Agency,[5] Department of Justice, and NOAA's Damage Assessment and Restoration Program.[6]

The AR first must document the process the agency used in reaching its final decision in order to show that the agency followed required procedures.  For NOAA actions, procedural requirements include the notice and comment provisions of the APA, the Magnuson-Stevens Fishery Conservation and Management Act (Magnuson-Stevens Act), the National

---

Whether a document should be retained for agency record keeping is a different consideration from whether it should be included in an administrative record.  Generally, an administrative record is a small subset of all documents on any particular topic.

[3]  Note that the agency generates documents, such as minutes of Leadership Council and other committee meetings, that do not relate to a specific agency decision.  While the agency would not include them in a docket, as the term is used in these Guidelines, or in an AR, the agency may need to retain such documents pursuant to broader record-keeping requirements.

[4]  Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*

[5]  Development and Management of Administrative Records, Carrie Wehling, Marilyn Kuray, Mark Stein, May 2002, presentation at EPA's OGC National Counseling Attorneys' Conference.

[6]  National Resource Damage Assessment (NRDA) Administrative Record Procedures Manual, NOAA Damage Assessment and Restoration Program, August 2001.

2

Environmental Policy Act (NEPA),[7] the Regulatory Flexibility Act,[8] the Information Quality Act,[9] the Coastal Zone Management Act,[10] and the Endangered Species Act (ESA).[11]  While an AR need not demonstrate compliance with procedural policies in executive orders, such as in Executive Orders 12866 and 13132, this information should be maintained as part of the agency's docket for a decision.

The AR must also explain and rationally support the agency's decisions.  The AR must show the agency has met the legal standards and criteria found in applicable laws, regulations, and relevant agency policies (e.g., <u>Consultation Handbook: Procedures for Conducting Consultation and Conference Activities Under Section 7 of the Endangered Species Act</u>, March 1998).  When use of the "best available science" is required, the AR generally must contain documents that address and analyze this topic.  Particularly, the AR should document consideration of opposing points of view, and provide a thorough explanation as to why the preferred course of action was adopted.  This information should be addressed in NEPA documents, preambles to final regulations, and when appropriate, ESA section 7 biological opinions.

In order to ensure the AR is a contemporaneous record of the agency's decision-making process (and to avoid misplacement of documents), a program manager should create a docket once consideration of a decision begins, and should compile and organize documents as they are generated or received.  Program managers should not wait until litigation is filed to begin a docket for the decision.   When a lawsuit is filed, program managers should work closely with NOAA General Counsel in reviewing documents in the docket to determine which of the documents in the docket should be included in the AR.  Taking great care in compiling a complete AR for a lawsuit is critical for the agency.  Having a complete, organized docket ready when a lawsuit is filed will greatly enhance the agency's ability to compile a complete AR.

**A.  Documents To Include In An Administrative Record**

Documents to include in an AR for a lawsuit will include paper documents, but may also include other means of communication or ways of storing or presenting information.  Data files, graphs, charts and photos may also be included in some cases.  The following two threshold principles can be used in evaluating whether to exclude a document from an AR: (1) relevance; and (2) significance.  (These guidelines are also useful for determining what should be included in a docket.)  If a document is either irrelevant or insignificant, it should not be included in the AR.

---

[7]  42 U.S.C. § 4341.

[8]  5 U.S.C. § 601 *et seq.*

[9]  Pub. L. No. 106-554, § 515

[10]  16 U.S.C. § 1451 *et seq.*

[11]  16 U.S.C. § 1531 *et seq.*

**Relevance**

NOAA Fisheries should evaluate only relevant documents for inclusion in ARs.   A document is relevant if it relates to the agency decision that is being challenged, i.e., it has a logical connection to the matter under consideration.   Relevant documents are documents that establish background or context for the agency's action, as well as documents that oppose or support the agency's final action.   Relevant documents also include documentation of procedural requirements, such as NEPA and RFA analyses, as well as the agency's substantive decision.

Because relevancy determinations can be difficult, and will affect the content of the AR and therefore the defense of the case, these determinations should be made in consultation with the NOAA General Counsel, who may also consult with Department of Justice attorneys assigned to the case.

**Significance**

A document is significant if it bears directly on the substantive issues examined by the agency while undertaking its decision-making process relating to the final action.   If a document contains information and deliberations relied on by the decision-maker (or incorporated by reference in documents relied on by the decision-maker), then the document is significant. Significant documents are a subset of relevant documents.   A document may be relevant, but not significant to the agency's decision.

The concept of significance is important to AR preparation due to the potentially vast numbers of documents that might contribute in some way to the agency's decision in a particular case. There is no statutory, regulatory, or judicial principle that "more is better" for an AR; indeed, the judicial review process often suffers from unduly large ARs filled with large quantities of marginal or insignificant documents that do not bear on the decision under review.   If a document is not significant, it should not be included in the AR.

Electronic documents provide a good example of the issue of significance.   In the electronic information age, huge numbers of electronic documents are created, transmitted and stored. These documents are largely of an informal and individual nature – one employee making a comment to other employees about some aspect of a pending decision.   Such communications are rarely, if ever, transmitted to the decision-maker and should be excluded from an AR.   See discussion of E-Mails, Section II.B. below.   Even if a document is both relevant and significant, it may still not be appropriate for inclusion in the AR.   Set forth below are guidelines for what documents should, and should not be, included in an AR.

4

**The following kinds of information should be included in the AR:**

- Relevant, significant documents relied on by the decision-maker, or incorporated by reference in documents relied on by the decision-maker, whether or not those documents support the final agency decision.

- Any AR that supports earlier decisions, if relevant; the agency must include the index of such an earlier AR, and then determine whether to include all, some or none of the documents.

- Relevant, significant background documents that help explain the context in which the decision was made.

- Relevant policies, guidelines, directives, and manuals where central to decision; these should be cited, and incorporated by reference as appropriate, but not included.

- Comments the agency received during the public review process from other agencies and the public, and the agency's responses to those comments.

- Reference documents (any document or scientific literature cited in any pertinent decision document (e.g., NEPA analyses)) must be identified in the AR index; the agency determines whether to include all or part of the document in the record.

- Summaries of relevant, significant meetings with members of the public to discuss the agency's proposed action; when prepared minutes of such meetings have been provided to the decision-maker, those minutes should be included in the AR. (Note that all such meetings should be documented to avoid the appearance of improper ex parte contact, regardless of whether that documentation is included in an AR.)[12]

- The final decision document (most agencies use a "decision memorandum") signed by the agency official with delegated authority to make a decision on behalf of the agency. In the case of external ESA consultations under Section 7(a)(2), the final decision document is the biological opinion or a determination that an action will not affect, nor is it likely to adversely affect, a listed species. In the case of the Magnuson-Stevens Act, it is the final decision document accompanying implementing regulations.

---

[12]An outside party seeking to provide substantive oral comments to NOAA Fisheries Service respecting the merits of a decision should be requested to provide a written record of their comments. If oral comments are nonetheless received, a summary of the oral communication (written by NOAA Fisheries Service) should be prepared for inclusion in the AR. All meetings between NOAA Fisheries Service and non-Executive branch parties to discuss a pending decision must likewise be on the record with a written summary of the meeting prepared for the AR. The summary must include a description of arguments and information presented by the outside party.

All documents in an AR should be dated, with authorship indicated. Undated, unattributed documents are less likely to be appropriate because it is difficult to tell how they fit into the agency's decision-making process. Similarly, documents prepared for signatures should be signed, and copies of the signed versions of the documents placed in the AR.

Different decision-making procedures and different types of decision documents are used depending on which statute is being applied. Different processes can result in ARs that differ, sometimes considerably, in the number of documents involved. Still, the goals of the AR remain the same - - to show the agency followed required procedures, and to show its substantive decision is rational and is supported by the evidence before the agency. Therefore, when assembling the AR, program managers should consider: (1) what procedures were required, what procedures were followed and how they were documented; and (2) what was the basis for the agency's choice of actions and how it was documented. Appendix A provides background on the preparation of an AR for Magnuson-Stevens Act actions.

## B.  Documents Not To Include In An Administrative Record

**Documents not in existence until after the agency decision.**

Documents not in existence at the time of the agency decision must be excluded from the AR. Program managers should consult with NOAA General Counsel if there are subsequent documents that nevertheless may be relevant to a lawsuit, as in the case of a legal challenge to an ongoing agency action, or failure to act.

**Personal notes**

Personal notes, such as an individual's notes taken at a meeting or journals, maintained by an individual for his or her own use, should not be included in an AR.[13] If those notes contain information relevant to an agency action, staff should include that information in the final decision document or supporting documents accompanying the final decision document through the approval process.

**Drafts**

The AR should not include internal "working documents"or "working drafts." Working documents are those that relate to routine administrative operations (such as fax cover sheets). Working drafts are draft decision documents, draft regulations or drafts of official agency work products (e.g., biological opinions or permits) that are circulated within the agency**.** Working

---

[13]  These documents – as well as drafts, privileged documents, and E-Mails – may contain information demonstrating development of agency policy and decisions. Therefore, even though these documents should not be included in an AR, the agency may be required to retain these documents in dockets or in other record-keeping systems pursuant to the Federal Records Act. See Section III below.

drafts sometimes contain unique information. For example, a draft may contain and explain a change from an earlier draft, or a draft may contain significant handwritten notes. Working drafts of this type should be retained as part of the agency's record-keeping requirements. For purposes of an AR, unique information contained in these drafts should be summarized in the decision memorandum, which would be placed in an AR in lieu of the working drafts themselves.

**Protected Documents**

Protected documents are those the government is prohibited from disclosing. Protected documents include those containing information protected by the Privacy Act or other statute, and those documents that are confidential as a result of a court order. As a general rule, protected documents are not included in an AR. Exceptions exist, however, such as when protected documents contain critical factual information supporting the agency's decision. In that case, those documents should be identified in the index to the AR, but not produced to the reviewing court or other parties to the case. Protected documents should not be revealed to the parties or their attorneys without a court order, but may potentially be reviewed a court.

**Privileged Documents**

Privileged documents are those the government may choose to withhold. Relevant privileges and prohibitions against disclosure include, but are not limited to, attorney-client documents (including legal memoranda prepared by agency counsel); attorney-work products; and documents reflecting the agency's internal deliberative process. Privileged documents should not be included in the AR.

The agency's "mental processes" – the healthy internal discussions reflecting staff viewpoints – are ultimately not relevant to a court's decision as to whether the agency followed the law in its final decision. The deliberative process privilege and attorney-client communication privilege protect these healthy discussions so that the participants will feel that they can be candid. Excluding these documents from the AR maintains the court's proper focus on the agency's decision and supporting information. In exchange, however, the decision document presented to the decision-maker must be robust in summarizing and presenting the factual and policy support for a recommended decision.

**E-Mails**

E-Mails should never be used as the formal agency documentation of decision or as support for the agency's decision. Generally, the decision-maker himself or herself rarely sees any of the E-Mails. Therefore, E-Mails should not be included in an AR. If an E-Mail contains factual information or analysis relied on to make an agency decision, then the content of that E-Mail should be included in the final decision document, or supporting memoranda relied on by the decision-maker (or incorporated by reference in documents relied on by the decision-maker). While this requires additional work from program staff, this practice will eliminate non-related E-Mail correspondence that is often intertwined with decision-making correspondence in the AR.

7

Even though E-Mails should not be included in an AR, they may still constitute a federal record, or be the subject of a FOIA request, and therefore staff should always consider their use of E-Mail carefully.  E-Mails are both overused and misused as a form of communication among agency staff.   E-Mail is intended for official and authorized purposes.  E-Mail messages are not private and could possibly be used in court as evidence.  A sloppy or ill-considered or even humorous E-Mail in the course of conducting or commenting on the agency's business could be released in response to a FOIA request or circulated outside the agency.  Once that happens, the E-Mail is public.

Moreover, "chain" E-Mails are a particularly ineffective way to discuss and resolve important substantive issues.  These types of E-Mails often invite inappropriate commentary from one or more of the participants, quickly become impossible to follow (or to know where they begin or end), and, as various headers are deleted, can leave quite misleading impressions as to who said what to whom, when, and why.  In addition, it is impossible to control their distribution.

E-Mail problems can be avoided by using a different method of communication such as a telephone or face-to-face meetings.  For example, if staff find that they need to write more than a few lines in an E-Mail, they could use the telephone, or set up a meeting, and have a conversation instead.  As noted above, if an important topic needing elaboration is being discussed in E-Mail, staff should follow-up the E-Mail discussion with preparation of a formal memorandum that would be appropriate for submission to the decision-maker and  inclusion in the AR.  Formal decision documents such as a "Decision Memorandum" should be used to document the agency's decision and rationale. Once the information in the E-Mail has been summarized in a decision memorandum, the E-Mail may be discarded, unless the agency's general record-keeping obligations require its retention.

## C.  Organizing and Indexing an Administrative Record for Litigation

A court reviews the agency action based on the AR before the agency at the time the decision was made.  The AR is the agency's evidence that its decision and decision-making process comply with relevant statutory and regulatory requirements.  All agency findings and conclusions and the bases for them must appear in the AR.  A complete AR allows the court to determine the agency's decision meets the appropriate APA standards and other relevant laws.

The following are the common steps in compiling an AR for litigation.

- Review the docket compiled as the decision was being made, and determine which documents should be included in the AR.

- Organize the documents to be included in the AR in a logical and accessible way in chronological order and/or by topic.

- Separate documents that do not fit into a chronological order by category (e.g., internal policies, references, guidelines, handbooks, or manuals).

- Prepare an index to the AR.  The index should identify each document (or other material)

by date and type and include the title and/or a brief description of the document or material.

●     Provide the proposed AR to the NOAA case attorney. The NOAA case attorney will review to see if additional documents should be included or if there are irrelevant, insignificant, protected or privileged documents that should be excluded.

●     Once the AR is final, the AR and index must be certified as the official and complete record of the decision, first by someone who is familiar with the AR and second, by one of the officials authorized to certify ARs under the seal of the Department of Commerce.

●     Consult with the NOAA case attorney to determine next steps for making the AR available to the court and the parties to the lawsuit.

●     In some instances, the court will accept for filing the certified index of the AR, in lieu of filing the AR itself. Copies of the documents in the AR are then made available to the parties to the litigation for inspection and copying. Selected portions of the AR are included as exhibits to the parties' summary judgment motions. This approach should be NOAA's preferred mode.

●     If the court will not accept a certified index in lieu of the complete AR, consult with the NOAA case attorney concerning the proper format for submitting the AR to the court and parties. Many courts have local rules that specify particular formats. These rules are not uniform. For example, some courts will accept 3-ring binders, while others will not. Some courts require Bate-stamping of each page, other courts do not. At the present time, most courts will not accept an electronic AR but others require one.

●     Very large ARs present special problems if the court will not allow NOAA to file a certified index of the AR in lieu of the AR itself. In that instance, if a voluminous document is part of the AR, that one document could be described in the AR index, not included in the AR filed with the court, and the court advised that it is "available upon request." If this approach is taken, staff must ensure that the document is indeed available and a copy can be supplied upon request.

●     When the original AR is in final form and the index and certification are complete, it is ready to be copied. The case attorney will determine how many copies are needed. If the AR must be filed with the court, there will be at a minimum one for each party and intervener in the case, one or more for the Justice Department, and one or more for the court. The NOAA case attorney will provide the necessary addresses, and the program manager will ship the copies of the AR.

D.  Potential Consequences of an Incomplete Administrative Record in Litigation

Agencies can best determine what information was presented to a decision-maker, and accordingly, the agency is in the best position to certify what its AR is for any decision.  If a court deems an AR incomplete, the court may allow the agency to provide additional documents, or to submit affidavits.  Once the government supplements the AR with affidavits or testimony, however, the opposing party may attempt to depose program staff and/or submit additional affidavits or testimony even though such actions are rarely appropriate under the APA.  The court may allow discovery when a party has proffered sufficient evidence suggesting bad faith or improprieties that may have influenced the decision-maker.  Discovery could include written interrogatories to the agency or depositions of agency personnel.

E.  Interplay between FOIA and an AR

Sometimes potential plaintiffs prepare for litigation by seeking agency documents with a Freedom of Information Act (FOIA) request, either before filing a lawsuit or at the same time. See Section IV for a discussion of FOIA.   Responding to a FOIA request differs from preparing an AR.  Preparing an AR requires consideration of all of the factors discussed above.  FOIA requests, however, are usually broadly worded and can include requests for documents that NOAA might view as irrelevant or insignificant to the decision at issue.  Because of this, responding to a FOIA request generally involves providing all documents on a topic, other than privileged or protected documents, regardless of relevance or significance to a particular agency decision.   It is important to note that if a document is released pursuant to a FOIA request, any privileges that might have applied will have been waived.   Thus, the agency may not be able to assert privileges with respect to that document in any other circumstance.

It is critical therefore that program staff consult with NOAA GC whenever a FOIA request is received that seeks administrative record materials and that relates to a final action that the agency has taken or will take.  Agency staff should consult with NOAA GC prior to releasing those documents and inadvertently waiving those privileges.

III.  FEDERAL RECORDS REQUIREMENTS

The federal records statutes recognize and protect the public's interests in government documents and other materials, regardless of whether the agency needs such documents and materials for an AR or a docket.  Agencies are required by law to make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency.  In addition, each agency must develop a records management system in which records must be properly stored and preserved, available for retrieval, and subject to appropriate approved disposition schedules.  As noted above, agencies will retain many records in its record management system that would not be appropriate for inclusion in an AR or a docket.

10

"Records" are defined in 44 U.S.C. § 3301 as:

> all books, papers, maps, photographs, machine readable materials, or other
> documentary materials, regardless of physical form or characteristics, made or
> received by an agency of the United States Government under Federal law or in
> connection with the transaction of public business and preserved or appropriate
> for preservation by that agency or its legitimate successor as evidence of the
> organization, functions, policies, decisions, procedures, operations, or other
> activities of the Government or because of the informational value of data in
> them.  Library and museum material made or acquired and preserved solely for
> reference or exhibition purposes, extra copies of documents preserved only for
> convenience of reference, and stocks of publications and of processed documents
> are not included.

Federal records requirements are found in 44 U.S.C. Chapter 29 (44 U.S.C. §§ 2901-2909,
"Records Management by the Archivist of the United States and by the Administrator of General
Services"), Chapter 31 (44 U.S.C. §§ 3101-3107, "Records Management by Federal Agencies"),
and Chapter 33 (44 U.S.C. §§ 3101-3107, "Disposal of Records").  These laws are administered
by the National Archives and Records Administration (NARA), the General Services
Administration (GSA), and each federal agency, including NOAA.  NARA has promulgated
extensive implementing regulations at 36 C.F.R. Subchapter B (Parts 1220 (General Provisions),
1222 (Creation and Maintenance of Federal Records), 1228 (Disposition of Federal Records),
1230 (Micrographic Records Management), 1232 (Audiovisual Records Management), 1234
(Electronic Records Management), and 1236 (Management of Vital Records)).  The NARA
Records Management Handbook is at:
http://www.archives.gov/records_management/publications/disposition_of_federal_records/
The NOAA Records Management Guide is at:
http://www.rdc.noaa.gov/~foia/asdhome/recguide-rev.htm.

Requirements for E-Mail management are at 36 C.F.R. Part 1234.  They are found at:
http://ecfr.gpoaccess.gov/cgi/t/text/textidx?c=ecfr&sid=81c67f5d7fac7487acfa6b86cdceabc&tpl
=/ecfrbrowse/Title36/36cfr1234_main_02.tpl

The Department of Commerce E-Mail policy is at http://www.rdc.noaa.gov/~foia/asdhome/rec-
email-rev.htm.  According to the current DOC policy, all E-Mails that meet the definition of a
federal record, above, should be printed (including the essential transmission data) and filed with
related paper records.  Even though E-Mails may need to be included in a records management
system, E-Mails are not to be included in an AR as documentation of agency compliance.  As
noted above, if staff wishes to present information to the decision-maker or to document
compliance with a procedural requirement, staff should include that information in the final
decision document or a supporting document presented or made available to the decision-maker.

For records management purposes, "working files" or "working drafts," should not be retained
unless they were circulated outside of the agency for official purposes, or if such documents
contain unique information necessary to understanding the agency's action or policy formulation
(see 36 C.F.R. § 1222.36(c)).  Therefore, once drafts cease to be useful, they should be discarded

unless (1) they have been circulated outside the agency for public or other agency comment, or, (2) they contain annotations that are significant and relevant to the agency's decision-making process.

Drafts are sometimes useful to staff for tracking the development of a record (for example, a fishery management plan) over time, and as a future reference for material that may not appear in the final record such as handwritten formatting, editing or instructional comments. Drafts used for these purposes, however, are not "federal records" and should therefore not be placed in a records management system; they should be discarded as soon as their usefulness is past.

## IV. FREEDOM OF INFORMATION ACT

The Freedom of Information Act (FOIA) mandates public access to government records under certain circumstances. It requires that "each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person" (5 U.S.C. § 552(a)(3)(A)). There are nine exemptions that allow the agency to withhold a record from release to the public (5 U.S.C. 552(b)). The nine exemptions are:

(1) national defense or foreign policy records that have been properly classified;

(2) internal agency personnel rules and practices;

(3) matters exempted from disclosure by a federal statute;

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(5) inter- or intra- agency memorandums or letters that would not be available by law to a party other than a party in litigation with the agency;

(6) personnel, medical, and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) certain records compiled for law enforcement purposes;

(8) records pertaining to regulation or supervision of financial institutions; and

(9) geological and geophysical information concerning wells.

FOIA defines "record" as any information that would be an agency record subject to the requirements of this section when maintained by an agency in any format, including an electronic format. 5 U.S.C. 552(f)(2). The Supreme Court has fashioned a two-part test for determining what constitutes agency records under FOIA. "Agency records" are records that are (1) either created or obtained by an agency, and (2) under agency control at the time of the FOIA

12

request.  "Agency records" are distinguished from "personal records" which are not subject to FOIA.  "Personal records" are generally records maintained by agency personnel for their own use and not made a part of the agency filing system.

There is a formal system for receiving and responding to FOIA requests.  Decisions as to whether to release records under FOIA are not made by the individual employees who generated or are in possession of the records.  Rather, any decision to withhold NOAA Fisheries records is made through the formal process, and culminates in a decision by the Assistant Administrator for Fisheries, which may be appealed to the Department of Commerce General Counsel.  Further, it is critical to consult with NOAA GC before releasing documents pursuant to a FOIA request that pertain to a final or an anticipated decision that has been or could be challenged.

Records managers should be aware that once a FOIA request is received, agency records that are responsive to the request may not be discarded, even if they are records that would normally not be part of an AR and otherwise <u>discarded</u> in the ordinary course of business.

For further information on FOIA, consult the U.S. Department of Justice's Office of Information and Privacy <u>Freedom of Information Act Guide & Privacy Act Overview</u>, May 2004.

For further information on processing FOIA requests to NOAA Fisheries, please refer to the NOAA FOIA Web site at <u>http://www.ofa.noaa.gov/~foia/</u>.  The Web site contains detailed information on FOIA fees, appeals, policies, and training, among other things.

**APPENDIX A.  Magnuson-Stevens Act Administrative Records**

An AR for a Magnuson-Stevens Act action (decision), although it may comprise many volumes, is relatively easy to conceptualize, because agency actions under the Magnuson-Stevens Act generally follow a well-established public process through the Fishery Management Councils (Council).  NOAA Fisheries has also formalized a consistent set of internal procedures for agency decision-making.  In addition, the substantive standards and legal tests for fishery management actions are relatively clear, and are spelled out in the Magnuson-Stevens Act and implementing regulations in the form of required and discretionary contents of FMPs, National Standards, and other specific legal requirements that should be addressed in the agency's decision documents.  Fishery management actions must also comply with "other applicable law." The AR must therefore demonstrate compliance with other applicable law including, but not limited to, NEPA, the RFA (if the action is accompanied by proposed and final rulemaking), the Paperwork Reduction Act (if the action contains an information request), the ESA, Indian tribal treaty fishing rights, and the Coastal Zone Management Act.

Although the fishery management process is complex, most steps require Federal Register notices, preparation and distribution of formal Council and/or NOAA Fisheries documents, and a formalized process for obtaining and responding to public comments.  NOAA Fisheries and the Council should have appropriate filing and indexing systems, with electronic indexing technology to facilitate identifying and assembling the hard copy AR and index.  Even with electronic filing and indexing systems, however, staff knowledgeable about the challenged decision must be involved in compiling the AR to ensure it is accurate and complete.

A typical AR index for Magnuson-Stevens Act action falls into the following categories. Documents within each category should be arranged in chronological order.

1.          Administrative Record Index and Certification

2.          Fishery Management Plan and Amendments – this section of index includes the original FMP and its numerous amendments, plus related EISs and EAs if they are relevant to the case.

3.          Federal Register Notices and Regulations – this section contains all FR notices that are relevant to the action, except for meeting notices which appear in a later section; it also contains regulations applicable to the fishery, and the notices of proposed and final rulemaking for the challenged action, if there are implementing regulations.

4.          Agency Decision Documents – this section includes decision documents, including the final agency Decision Memorandum.

5.          Agency Outgoing Correspondence – this section includes communications from the agency to a variety of outside parties including the Council and its subgroups, fishery industry representatives, members of the public, "Distribution" and

14

"Interested Parties," and to the states for purposes of Coastal Zone Management Act review).

6.    Meeting Announcements – this section contains all Federal Register notices of meetings of the Council and its subgroups, as well as the Council's own meeting notices.

7.    Council Development Documents – this section of the index should include agendas, minutes, and other records related to the work of the Council.  This section of the AR should be arranged in chronological order, by Council meeting date.  For each meeting, the AR should include the proposed agenda and the minutes, and all records from the Council briefing book (and supplemental records that are distributed at the Council meeting) that relate to the particular issue being litigated.  In the record description in the index, the AR should include the Council document number (e.g., "Ad Hoc Committee Report C4a") in order to make sure the paper trail is complete when the documents are compared against the numbered items in the Council's meeting agenda (e.g., Council Meeting of June 18-19, 1996, Agenda Item C. Salmon Management, 4. Plan amendments, a. Report of Ad Hoc Committee).

8.    Council Newsletters - this section of the AR should contain, in chronological order, the newsletters that the Council distributes soon after each Council meeting.

9.    Cassette Tapes of Council Meetings -- these are noted in the index as "Available Upon Request," and they occasionally have to be produced for the AR.

10.   Council Comments – this section of index contains communications by the Council's Chairman and Executive Director to NOAA Fisheries and others concerning the issue that is being litigated.

11.   Comments from Other Government Agencies – this section contains comments received from other federal agencies (such as State, Interior, and EPA), and state and local governments.

12.   Public Comments – this section of the AR index should contain all written public comments received during the development of the action, and notes of meetings held between NOAA Fisheries and members of the public regarding the action.

13.   References (this section contains citations to relevant reference materials such as maps, technical guidance documents, technical reports, scholarly works, issue papers, and other relevant materials that don't fall into one of the other categories) should be identified in the AR index, but the agency may determine whether to include none, part or all of any reference document.  A note of caution about references: the agency's case cannot be built by simply including reference

15

materials that might support the agency's position after the fact. Before reference documents are useful, they have to be at least mentioned (but preferably discussed, analyzed, and conclusions drawn from them) in the agency's decision documents.

As to any NOAA Fisheries' internal documents, those documents generated by agency personnel as comments on the action as it is being developed and finalized may be appropriate for including in the docket to satisfy federal record-keeping requirements, but should not be included in an AR. Information in those documents should be included in decision documents presented to the decision-maker.

When a Magnuson-Stevens Act lawsuit is served on a federal agency, the agency generally has 45 days within which to file both its answer to the petition and its AR with court. This is an extremely short deadline. Using NOAA Fisheries' and the Council's existing filing systems (which are largely consistent with the document categories for ARs that are listed above), and using NOAA Fisheries' electronic file index, the agency should be able to meet deadlines.