IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LEGACY FISHING COMPANY and THE** ) | |
| **FISHING COMPANY OF ALASKA, INC.** ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1:06CV00835(JR)** |
| ) | |
| **THE HONORABLE CARLOS GUTIERREZ,** ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES OF *AMICUS CURIAE* NATIONAL
FEDERATION OF INDEPENDENT BUSINESS
LEGAL FOUNDATION IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
REGARDING THEIR REGULATORY FLEXIBILITY ACT CAUSE OF ACTION**

By contemporaneously filed motion, the National Federation of Independent Business

Legal Foundation ("NFIB Legal Foundation") has moved to participate in this action as *amicus*

*curiae* with respect to Plaintiffs' Fifth Cause of Action. Plaintiffs there allege that Defendant

Gutierrez, through designees at the Department of Commerce and the National Marine Fisheries

Service ("NMFS"), violated the Regulatory Flexibility Act, 5 U.S.C. §§ 601-612 (2000)

("RFA"), when promulgating Amendment 79 and its implementing rules to the North Pacific

Groundfish Fishery Management Plan, by failing to give due account to the "significant

economic impact on a substantial number of small entities," or "SEISNSE," that the

implementing rules will have on small entities. *See* Fisheries of the Exclusive Economic Zone

off Alaska; Groundfish Retention Standard, 71 Fed. Reg. 17,362 (Apr. 6, 2006) (to be codified at

50 C.F.R. pt. 679).

Accordingly, Proposed *Amicus* NFIB Legal Foundation respectfully submits the

following Memorandum of Points and Authorities Supporting Plaintiffs' Motion for Summary

Judgment with regards to Plaintiffs' RFA Cause of Action. In addition to acting on behalf of any

members adversely affected by NMFS' failure to comply with the RFA, the NFIB Legal

Foundation has a special and demonstrated interest and expertise in federal government-wide

RFA compliance. The Proposed *Amicus* thus respectfully submits that it will present additional

arguments and perspective that will inform this Court's consideration of Plaintiffs' well-founded

RFA claim.

## I.      NFIB LEGAL FOUNDATION'S STATEMENT OF INTEREST

The National Federation of Independent Business ("NFIB") "is the nation's oldest and

largest non-profit national organization dedicated to representing the interests of small business-

owners throughout all 50 states." Declaration of Karen R. Harned ("Harned Decl.") ¶ 7 (attached

hereto as Exhibit 1). "NFIB's national membership consists of independently owned and

operated businesses that are not dominant in their field of operations. The majority of NFIB

members have five or fewer employees, gross sales of approximately $350,000 per year, and net

profits of $40,000 to $50,000 annually." *Id.* ¶ 8. The NFIB Legal Foundation is a 501(c)(3)

public interest law firm created to protect the rights of America's small-business owners by

ensuring that the voice of small business is heard in the nation's courts. *See id.* ¶ 3; *see also,*

*e.g., National Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272 (D.C. Cir.

2005).

One of the NFIB Legal Foundation's specific concerns is agency compliance with the

RFA. *See* Harned Decl. ¶ 3. Specifically, NFIB and the NFIB Legal Foundation have filed over

twenty comments with various federal agencies on RFA compliance matters to help ensure

federal government-wide attention to and compliance with the RFA. *See id.* ¶ 5. Further, NFIB

itself has brought or intervened in cases, such as this one, to protect its members' interests in a

robust regulatory flexibility process.[1]  *See id.* at ¶ 4.  NFIB works closely with the Small

Business Administration's ("SBA") Office of Advocacy to ensure that the RFA is monitored and

enforced.  *See id.* at ¶ 6.

    More generally, both NFIB and the NFIB Legal Foundation serve an important mission

ensuring agency fidelity to the RFA.  The Court of Appeals for the District of Columbia recently

recognized the RFA's importance in federal rulemaking when it held that the Federal

Communications Commission's failure to undertake required regulatory flexibility analysis is not

an error that can be considered "harmless."  *U.S. Telecom Ass'n v. F.C.C.*, 400 F.3d 29, 42 (D.C.

Cir. 2005).  Due to the number of small businesses that engage in head and gut catcher/processor

("H&G CP") fishing activities that are affected by the Amendment 79 rules in the Bering

Sea/Aleutian Islands ("BSAI"), NFIB has a specific and particularized interest in the NMFS

regulations at issue here.  *See* Harned Decl. ¶¶ 9, 10.

    The interests of the NFIB Legal Foundation in a meaningful and thorough RFA process

and the interests of NFIB members involved in BSAI fishery are harmed by the NMFS' rules

implementing Amendment 79.  The rules were promulgated without adherence to the

requirements of the RFA, specifically by refusing to recognize that small businesses are affected

by the rules, which forestalls the preparation of an adequate required initial regulatory flexibility

analysis ("IRFA") or final regulatory flexibility analysis ("FRFA") to minimize the significant

economic impact on small businesses.  A meaningful IRFA/FRFA process would help identify

---

[1]    For instance, in *National Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,* 417 F.3d
    1272 (D.C. Cir. 2005), NFIB recently prevailed on its own single-count RFA claim.  The
    NFIB also has brought the following two actions *NFIB v. Leavitt*, No. 1:01-CV-900-PF
    (D.D.C. 2006), *sub nom Ad Hoc Metals Coalition v. Leavitt*, No. 1:01-CV-776-PF, and
    *NFIB v. Architectural and Transp. Barriers Compliance Bd.*, No. 1:05-CV-03129
    (D.D.C. 2005).

3

alternatives that meet NMFS' statutory objectives, while protecting the interests of NFIB, its

members, and other small businesses.

## II.    STANDARD OF REVIEW

Turning first to the Court's review authority, the RFA's judicial review provisions state

that review of agency action is subject to the standards set forth in the Administrative Procedure

Act ("APA"), specifically 5 U.S.C. §§ 706, 611(a)(1), (2) (2000); *see also Nat'l Ass'n for Home*

*Care v. Shalala,* 135 F. Supp. 2d 161, 168 (D.D.C. 2001) ("*NAHC*"); *Blue Water Fisherman's*

*Ass'n v. Mineta*, 122 F. Supp. 2d 150, 175 (D.D.C. 2000) (stating that the "standard of review is

the same as that under the APA").   According to the legislative history of the Small Business

Regulatory Enforcement Fairness Act ("SBREFA") of 1996, Pub. L. No. 104-121, 110 Stat. 857

(1996), which enacted the RFA's judicial review provisions: "[I]f the court finds that a final

agency action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance

with the law, the court may set aside the rule or order the agency to take other corrective

action."[2] 142 CONG. REC. S3245 (daily ed. Mar. 29, 1996) (statement of Sen. Bond).   While

judicial review under APA standards is limited, it is more than merely perfunctory.  *Oceana, Inc.*

*v. Evans*, 384 F. Supp. 2d 203, 212 (D.D.C. 2005) ("[T]his Court undertakes a 'searching and

careful' examination . . . .") (quoting *Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 378

(1989)).

---

[2]    Similarly, SBREFA's main drafter confirmed sub-section 611(a)(1) & (2)'s express
terms, stating that "[r]eview under these sections is not limited to the agency's
compliance with the procedural aspects of the RFA; final agency actions under these
sections will be subject to the normal judicial review standards of Chapter 7 of Title 5."
142 CONG. REC. E571-01, E574 (daily ed. Apr. 19, 1996) (remarks of Rep. Hyde).
Chairman Hyde further stated that the "normal" standards to be applied include the
"arbitrary and capricious" standard.  *Id.*

In addition to APA principles, the standard of review for an agency's RFA obligations is derived in part from one of the first cases brought under the SBREFA amendments to the RFA, *Associated Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104 (1st Cir. 1997). In that case, the First Circuit found that the RFA imposes upon agencies obligations similar to those under the National Environmental Protection Act ("NEPA"). The court explained that the RFA's economic analysis requirements serve the same function as the environmental impact statement ("EIS") requirement under NEPA, both are "meant to inform the agency and the public about potential adverse effects and about the availability, if any, of less harmful alternatives prior to a final decision on the fate of a particular project or rule." *Id.* at 114; *see also Nat'l Ass'n of Psychiatric Health Sys. v. Shalala*, 120 F. Supp. 2d 33, 44 n.8 (D.D.C. 2000) (analogizing the RFA to NEPA EIS requirements).

The RFA, as amended by the SBREFA, requires agencies to consider the economic impact that a proposed rulemaking will have on small entities. The head of an agency may certify that a proposed rule will not have a SEISNSE, but otherwise, the agency's preparation of an IRFA and an FRFA must comport with specific requirements. The mandatory elements for a legally adequate FRFA, as set forth in 5 U.S.C § 604(a)(2)-(5), must include among other things:

1. A summary of the significant issues raised by the public comments in response to the IRFA analysis, a summary of the assessment of the agency of such issues, and a statement of any changes made in the proposed rule as a result of such comments;

2. The estimated number and types of small entities to which the proposed rule will apply;

3. The projected reporting, recordkeeping, and other compliance requirements, including an estimate of the small entities subject to the requirements and the professional skills necessary to comply; and

4. The steps the agency has taken to minimize the significant economic impact on small
   entities consistent with the stated objectives of applicable statutes, including a statement
   of the factual, policy, and legal reasons for selecting the alternative adopted in the final
   rule and why each one of the other significant alternatives to the rule considered by the
   agency that affect the impact on small entities was rejected. 5 U.S.C § 604 (2000).

In preparing its FRFA, an agency may provide either a quantifiable or numerical description of the effects of a proposed rule or alternatives to the proposed rule or more general descriptive statements if quantification is not practicable or reliable. *Id.* § 607 (2000). Among other RFA elements, an agency's Section 605(b) certification of "no SEISNSE" and the agency's compliance with 5 U.S.C. § 604 in completing the FRFA are judicially reviewable actions. *Id.* §§ 611(a)(1)-(2) (2000). This is the basis for the Court's jurisdiction over Plaintiffs' RFA claim.

Agency compliance with the RFA is not, however, a prerequisite to adequate judicial review. The Defendant cannot avoid his substantive obligations under the RFA by mere procedural compliance. The RFA requires more than an agency simply "checking the appropriate procedural boxes" as it proceeds through the rulemaking. A FRFA must provide "a meaningful, easily understood analysis that covers each requisite component dictated by the statute and makes the end product-whatever form it reasonably may take-readily available to the public." *Nat'l Ass'n of Psychiatric Health Sys.*, 120 F. Supp. 2d, at 42. Submission of an FRFA disclaiming that any small businesses exist in the industry being regulated precludes any consideration of economic alternatives and thus is subject to judicial review in order to determine the sufficiency of such a finding for compliance with the RFA.

## III.  ARGUMENT

NMFS fell short of completing a legally adequate analysis of the economic impact on small businesses associated with the regulations implementing Amendment 79.  Specifically, NMFS failed to appropriately classify any H&G CP vessels as small businesses; thereby avoiding the requirements of the RFA and denying these vessels RFA protections.

The RFA protects small businesses, like those affected by Amendment 79 and its implementing regulations, by prescribing a detailed, specific process by which federal agencies must assess the impact of regulatory proposals on small entities.  Under the RFA, an agency is required to develop and consider alternatives that would ameliorate the negative impact associated with regulations that may have deleterious effects on small business.  This Court previously has concluded "that '[t]he legislation is intended to be as inclusive as possible, and doubts about its applicability should be resolved in favor of complying with the provisions of the Act.'" *NAHC*, 135 F. Supp. 2d, at 168 (*quoting* 126 CONG. REC. H24589 (daily ed. Sep. 8, 1980) (House Statement of RFA Issues) (alteration in original)).  Accordingly, "[t]he statement's context clearly shows that Congress intended that agencies err on the side of caution in determining whether to perform regulatory flexibility analyses." *Id.*  NMFS failed to perform a fully comprehensive RFA analysis by refusing to recognize H&G CP vessels as small businesses.  To be in compliance with the RFA, NMFS' analysis should have been broadly inclusive of all possible estimated costs associated with the rules implementing Amendment 79 on small businesses, including the impact on affected H&G CP vessels.

Once NMFS initiated the RFA process, the agency was obligated to perform the analysis properly.  In enacting the SBREFA provisions to the RFA, Congress acknowledged "that agencies have given lip service at best to RFA, and small entities have [therefore] been denied

legal recourse to enforce the Act's requirements." *See* 142 CONG. REC. S3242, S3245 (daily ed., Mar. 29, 1996) (Small Business Regulation Enforcement and Fairness Act - Joint Managers' Statement of Legislative History and Congressional Intent). As explained herein, NMFS has made judicially recognizable errors in its SEISNSE analysis that require the regulations promulgated under Amendment 79 to be either remanded back to NMFS or the enforcement of such regulations to be deferred.

### A.    NMFS Has Failed to Recognize the Universe of Small Entities Subject to Amendment 79

NMFS failed to comport with a prudent level of compliance with the requirements of an RFA analysis by electing not to recognize any of the H&G CP vessels affected by the Amendment 79 rules as small businesses. The SBA Office of Advocacy has explained that "[t]he preparation of the required analysis calls for due diligence, knowledge of the regulated small entity community, sound economic and technical analysis, and good professional judgment." U.S. Small Business Admin. Office of Advocacy, A Guide for Government Agencies: How to Comply with the Regulatory Flexibility Act ("Guide for Government Agencies") at 4.[3] By choosing to classify H&G CP vessels under the annual receipts standard

---

[3]    Under the RFA, the SBA's Office of Advocacy is chartered to "monitor agency compliance with this chapter." One court has termed the Office of Advocacy the federal government's RFA "watch-dog." *Southern Offshore Fishing Ass'n v. Daley*, 995 F. Supp. 1411, 1435 (M.D. Fla. 1998) (*SOFA I*). Pursuant to this statutory authority, the SBA Office of Advocacy has issued and revised the referenced RFA training materials. Furthermore, by Executive Order, President George W. Bush has required that all federal agencies develop "written procedures and policies . . . to ensure that the potential impacts of agencies' draft rules on small businesses . . . are properly considered during the rulemaking process." This Executive Order also directs the Office of Advocacy to provide agencies with information on how to comply with the President's directive, and enhances SBA's opportunity to ensure agency RFA compliance in individual rulemakings, as the SBA does via the Guide for Government Agencies. E.O. 13272, *reprinted at* 67 Fed. Reg. 53461 (Aug. 16, 2002). The Office of Advocacy also has authority to appear in court on the side of small businesses against other agencies in RFA-based challenges. 5 U.S.C. § 612(a), (b) (2000).

8

rather than the employee standard, the NMFS effectively precluded any of its obligations under the RFA with regard to these vessels. NMFS may not skirt the stringent substantive requirements of the RFA, such as considering alternatives to minimize the economic impacts of proposed regulations, by a mere procedural tool.

The first step in any RFA analysis is to identify the universe of small entities, including small businesses, affected by the rule. *See Northwest Mining Ass'n v. Babbitt*, 5 F. Supp. 2d 9, 15 (D.D.C. 1998) (invalidating rule for failure to identify correct universe of small mining businesses affected by new regulatory bonding requirement). As the RFA watchdog agency, SBA's Office of Advocacy has stated: "To know whether a regulatory proposal affects a substantial number of small entities, the regulator must first know how many regulated entities exist and which are small." *See* Guide for Government Agencies, at 15. The RFA places the affirmative duty on the regulating agency to calculate its rule's economic impact on small businesses. *See North Carolina Fisheries Ass'n v. Daley*, 16 F. Supp. 2d 647, 653 (E.D. Va. 1997) (*NCFA I*). Procedural manipulation of that affirmative duty will not be tolerated by an agency under judicial review.

In *SOFA I,* for example, NMFS claimed that a 50 percent reduction in the commercial catch quota for large coastal sharks would impact anyone with a commercial shark fishing permit, regardless of whether that person ever commercially landed a shark. 995 F. Supp., at 1435. In fact, although 2,000-plus fishermen held commercial shark fishing permits, only 326 of these permit holders commercially harvested any of these sharks and only 100-150 permit holders regularly caught the quota. *Id.* The court rejected this attempt to game the numbers. *Id.*, at 1435-36; *see also North Carolina Fisheries Ass'n v. Daley*, 27 F. Supp. 2d 650, 658-61 (E.D. Va. 1998) (*NCFA II*) (detailing and criticizing efforts to extend affected universe to minimize

9

economic impacts as Section 605(b) strategy). Efforts by NMFS to set a standard in order to preclude any of the H&G CP vessels from qualifying for RFA protections should be equally rejected by this Court. Rather than being over-inclusive as it was in *SOFA I*, here NMFS underestimated the affected members of the BSAI fishing industry affected by Amendment 79 in order to avoid the requirements of the RFA.

After publication of the IRFA, the SBA's Office of Advocacy specifically informed NMFS that it had employed the wrong size standard with respect to the H&G CP vessels:

> The Office of Advocacy is concerned about the size standard used in the proposed rule. The proposed rule involves catcher/processors. SBA's Office of Size Standards indicates that the correct NAICS (North American Industry Classification System) code for this industry is code 311711, which is known as "Seafood Product Preparation and Packaging." This classification specifically includes establishments that are "floating factory ships." The size standard for businesses in that industry is 500 or fewer employees.
>
> However, on page 116 of the IRFA, NMFS states that a business involved in both operations, harvesting and processing seafood products, is a small business if it meets the $3.5 million size standard for fish harvesting operations, which are in NAICS code 114111, rather than the 500 employee standard for floating factory ships in NAICS code 311711. There is no explanation for as to why NMFS believes that this is the appropriate standard.

Comments of SBA Office of Advocacy, A.R. 164, at 4.

Similarly, in its comments on the IRFA, Plaintiff Legacy also expressed concern over NFMS' decision to use the size standard applicable to "catcher vessels" for an RFA analysis of a rule that would affect "catcher/processor vessels." Comments of Legacy Fishing, A.R. 150, at 27. Plaintiff Legacy cogently explained the error as follows:

> In Amendment 79, the Council made the determination that none of the HT-CP vessels were small businesses because they "have annual receipts in excess of $3.5 million and/or are owned by businesses with annual receipts in excess of $3.5 million." . . .

>However, the standard which applies to processors is whether the
>entity has 500 or fewer employees. The decision to treat the HT-
>CP vessels as if they were the same as catcher vessels – which had
>the effect of making the entire fleet ineligible for consideration as
>small businesses – was patently arbitrary.

*Id.*[4]

SBA's and Plaintiff Legacy's comments in response to the IRFA alerted NMFS to its

faulty RFA analysis. Despite this warning, NMFS refused to adequately respond to this concern

in its FRFA when it concluded that there was "no SEISNSE." Uncertainty about a rule's true

application and affects may not, however, be the basis for an agency's "no SEISNSE"

determination. The RFA's legislative history unequivocally counsels that "[t]he legislation is

intended to be as inclusive as possible, and doubts about its applicability are to be resolved in

favor of complying with provisions of the Act." 126 CONG. REC. H24588, H24589 (daily ed.

Sept. 8, 1980); *NAHC*, 135 F. Supp. 2d, at 168.

The FRFA provided by NMFS clearly expresses such doubts when it states that "NMFS

does not have the level of data and sufficient information … to make a statistically confident

estimation of the number of small entities affected by this proposed action." FRFA of BSAI

Amendment 79, at 137 (July 2005). If the selected standard of classification stands as the only

barrier between the consideration of such economic impacts on H&G CP small businesses, then

NMFS should be over-inclusive in its analysis of possible alternatives, rather than seeking to

disqualify these vessels from the benefits of RFA processes. By setting the size standard for

---

[4]    The distinction between catcher vessels and processor/catcher vessels is based on the fact
that catcher/processor vessels have employees for whom they withhold taxes and pay
payroll taxes and conduct value added processing operations, in addition to harvesting
operations. Catcher vessels do not have these added expenditures and revenues.
Comments of Legacy Fishing, A.R. 150, at 27. Because of these disparities, SBA's
Office of Size Standards applies different small-business thresholds to the two types of
vessels. A.R. 164, at 4.

H&G CP vessels to a level that makes it "improbable that any of the [H&G CP vessels] are small entities," NMFS discharged itself of its obligations under the RFA without making an adequate effort to produce a true economic analysis of the effects of the Amendment 79 regulations. *Id.*, at 134.

As *NCFA I* correctly explained, "[w]hile the federal government cannot be expected to explore every possible contingency before certifying that there is no significant impact, the government must make some showing that it has at least considered the potential effects of" the specific action it is considering. *See* 16 F. Supp. 2d, at 652. In that instance, the court concluded that even though the agency was maintaining a fish quota at the same level as the previous year, it could not simply assume that this action would have no adverse economic impact the next year. *Id.* at 653. As a result, the court ordered the Secretary to "undertake enough analysis to determine whether the quota had a significant impact on small entities." *Id.*

This Court has previously made similar determinations when it invalidated past unqualified claims by an agency of "no SEISNSE." For example, this Court rejected a Department of Health and Human Services RFA analysis when, among other things, the agency "did not obtain data or analyze available data on the impact of the final rule on small entities, nor did [it] properly assess the impact the final rule would have on small entities." *Nat'l Ass'n of Psychiatric Health Sys.*, 120 F. Supp. 2d, at 43. Similarly, this Court should conclude in this case that NMFS is required to perform some level of economic analysis on the small business effects of Amendment 79 in order to satisfy RFA requirements for the implementing rules.

**B.    An FRFA Cannot Save a Fundamentally Flawed "No SEISNSE" Finding**

NMFS has offered descriptions of entities affected by various alternative rules in its FRFA, but such analysis merely emphasizes the flawed "no SEISNSE" finding that establishes the faulty foundation for the entire FRFA, precluding adequate consideration of the true impact

of the Amendment 79 rules on small business. Though NMFS recognized the possibility that some regulated vessels will exit the industry as a result of the costs of compliance with the Amendment 79 rules, NMFS steadfastly refused to acknowledge that any of these vessels are small entities deserving of a RFA analysis. As the SBA has explained,

> Significance should not be viewed in absolute terms, but should be seen as relative to the size of the business, the size of the competitor's business, and the impact the regulation has on larger competitors. For example, a regulation may be significant solely because the disparity in impact on small entities may make it more difficult for them to compete in a particular sector of the economy than large businesses.

Guide for Government Agencies, at 17.

Significantly, the SBA's Office of Advocacy has spoken directly to the classification standard used by the NMFS following the IRFA, indicating that the employee standard would be more appropriate in assessing the significance of the effects of Amendment 79 on small business than the annual receipts standard. A.R. 164, at 4. Rather than accept guidance from the SBA, NMFS insisted on retaining the classification system from its original IRFA until "new guidance is adopted." FRFA of BSAI Amendment 79, A.R. 111-04, at 134. Although NMFS properly submitted its FRFA, by continuing to apply the annual receipts standard NMFS failed to resolve the underlying error preventing a legally adequate RFA analysis from being performed. *Id.*

*SOFA I*, a seminal RFA case, also involved an agency's failed effort to absolve its flawed SEISNSE determination via completion of a FRFA. *SOFA I* rejected the effort, explaining:

> NMFS's refusal to recognize the economic impacts of its regulations on small businesses also raises serious question about its efforts to minimize those impacts through less drastic alternatives…. the RFA does not require mechanical exactitude. However, the statute compels the Secretary to make a "reasonable, good-faith effort," prior to issuance of a final rule, to inform the public about potential adverse effects of his proposals and about less harmful alternatives.

995 F. Supp., at 1436-37.

Thus, when an agency recognizes that there may be any potential SEISNSE of a regulation, *see NAHC*, 135 F. Supp. 2d, at 168, the agency must take steps to enhance small entities' ability to participate in the rulemaking process. 5 U.S.C. § 609(a) (2000). Such outreach should include special notification to small entities of the agency's intentions, as well as other specific small business outreach efforts such as "the conduct of open conferences or public hearings concerning the rule for small entities including soliciting and receiving comments over computer networks." *Id.* at § 609(a)(3)-(4). No legally adequate analysis may result from an FRFA that presents new substantive mandates outside the scope of the IRFA, as no opportunity for the participation of the public and affected small entities has been permitted on these additional measures.[5]

Accordingly, NMFS cannot, as it has attempted to do, satisfy its obligation under the RFA by reaching decisions with what are admittedly insufficient data and a lack of opportunity for small business participation once the potential for SEISNSE arises. By virtue of the fact that it exempted a small number of vessels (length below 125 feet), NMFS has acknowledged that the rules could have a disproportionate and unreasonably adverse economic impact on small businesses. Therefore, the RFA requires that NMFS' FRFA at least contemplate the possibility that application of the appropriate size standard to H&G CP vessels would reveal a significant economic impact on those vessels. This Court should require NMFS to fulfill its undertaking to comply with the RFA by rationally considering the Amendment's economic impact on small

---

[5]    Some of the new measures added to the proposed rule implementing Amendment 79 during the time period between the IRFA and the FRFA include: a ban on mixing of hauls; observer schedules; and scale/observer location limitations. 71 Fed. Reg. 17,362 (Apr. 6, 2006), A.R. 13.

14

businesses before proceeding any further to implement onerous requirements that will

unnecessarily and illegally bankrupt small H&G CP fishing businesses.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Summary

Judgment as to the RFA claim in Plaintiffs' Fifth Cause of Action.


Dated:  September 15, 2006

Respectfully submitted,


Frank J. Eisenhart (D.C. Bar No. 418630)
DECHERT LLP
1775 I Street, N.W.
Washington, DC 20006
D.C. Bar No.
Tel.: 202-261-3306
Fax 202-261-3333

Counsel for Proposed *Amicus* National Federation
of Independent Business Legal Foundation

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of September, 2006, true and correct copies of Proposed *Amicus Curiae* National Federation of Independent Business Legal Foundation's Motion for Leave to Participate as an *Amicus Curiae* and Submit Its Proposed Memorandum of Points and Authorities Supporting Plaintiffs' Motion for Summary Judgment Regarding Their Regulatory Flexibility Act Cause of Action, Memorandum and Points of Authorities in Support of the Motion for Leave, and a Proposed Order have been served via first-class mail, postage prepaid, upon the following:

David E. Frulla
Shaun M. Gehan
Dan Blynn
KELLEY DRYE & WARREN LLP
3050 K Street, N.W. – Suite 400
Washington, D.C.  20007

Michael R. Eitel
U.S. DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station
P.O. Box 7369
Washington, D.C. 20044-7369

Eric P. Jorgensen
Michael C. LeVine
Katharine S. Glover
EARTHJUSTICE
325 Fourth Street
Juneau, Alaska 99801

Janis Searles
OCEANA
4189 SE Division Street, North Suite
Portland, Oregon 97202

Frank J. Eisenhart