Eric P. Jorgensen
Michael C. LeVine (*pro hac vice*)
Katharine S. Glover
EARTHJUSTICE
325 Fourth Street
Juneau, Alaska 99801
Phone: (907) 586-2751
Fax:    (907) 463-5891

Janis Searles (*pro hac vice*)
OCEANA
4189 SE Division Street, North Suite
Portland, Oregon 97202
Phone: (503) 234-4552
Fax:    (503) 230-0903

*Attorneys for Intervenor-Defendants Oceana and
Alaska Marine Conservation Council*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEGACY FISHING COMPANY and THE FISHING COMPANY OF ALASKA, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THE HONORABLE CARLOS GUTIERREZ, in his official capacity as Secretary of Commerce, | ) Case No. 1:06-CV-00835-JR ) ) |
| Defendant, and | ) ) |
| OCEANA and ALASKA MARINE CONSERVATION COUNCIL, | ) ) ) |
| Intervenor-Defendants. | ) ) |

**INTERVENOR-DEFENDANTS' REPLY SUPPORTING THEIR CROSS-MOTION
FOR SUMMARY JUDGMENT**

Intervenor-Defendants Oceana and Alaska Marine Conservation Council submit this reply brief in support of their Opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment (Docket No. 28) ("Int.-Def. Op. Br."), filed September 1, 2006.

The Magnuson-Stevens Fishery Conservation and Management Act (MSA), 16 U.S.C. §§ 1801-1883, is a conservation statute designed to ensure the long-term sustainability of the aquatic environment and the fisheries dependent on it. *See* Int.-Def. Op. Br. at 2-9. The legislative history of the Act and the 1996 amendments to it reflect this conservation goal and a broad mandate to conserve ocean resources. *See, e.g.,* 142 Cong. Rec. S10,794 at 10810-11 (1996) (Alaska Senator Stevens stating that the "whole purpose" of the Act is to "protect our fisheries and have a conservation ethic to be the major goal"). In furtherance of that conservation objective, Congress enacted stringent requirements to minimize bycatch, protect essential fish habitat, and prevent overfishing. *See* 16 U.S.C. § 1853(a)(7), (10), (11); Int.-Def. Op. Br. at 6-8.

The requirement to minimize bycatch "to the extent practicable" must be understood against that conservation background. The provision was implemented by Congress in an effort to eliminate wasteful fishing practices. *See* Int.-Def. Op. Br. at 6-9. The phrase "to the extent practicable" represents a common-sense limitation on an otherwise absolute requirement to reduce bycatch; it reflects a recognition that commercial fishing will result in some bycatch and that the MSA does not require closing all fisheries. *See id.* at 23-24. That qualifying language allows NMFS to consider a constellation of factors, including economic costs, when deciding how best to meets its obligation to reduce bycatch, but those considerations may not trump the conservation objectives of the statute. *See id.*

Plaintiffs, however, continue to belittle the conservation focus of the statute by relying on the phrase "to the extent practicable" to argue that the MSA precludes the imposition of particular economic costs. *See* Pls.' Br. in Opp'n to Def's. and Def.-Ints.' Cross-Mot. For Summ. J. (Docket No. 33, Sept. 20, 2006) ("Plfs.' Reply Br.") at 1-2, 11-14, 21. Plaintiffs attempt to draw a distinction in which NMFS may impose costs to remedy overfishing but not to achieve the other conservation objectives of the statute, such as reducing bycatch. Neither the MSA nor the cases interpreting it support such a distinction. Similarly, there is no support for Plaintiffs' contention that the MSA requires NMFS to show that measurable benefits of each provision in a regulation outweigh the economic costs of that provision to the regulated entities or that NMFS must consider Plaintiffs' suggested alternatives to these individual provisions.

Plaintiffs contend that "[u]nder the facts of this case, particularly where none of the species involved are either overfished or subject to overfishing, [the] practicability standard takes on added force." Plfs.' Reply Br. at 11. Thus, Plaintiffs argue, it is only when NMFS acts to eliminate overfishing that "economic considerations are diminished." *Id.* at 12; *see also id.* at 2-3. These arguments are based solely on the inclusion of the phrase "to the extent practicable" in the statutory mandate to reduce bycatch. Plaintiffs offer no support for their contention that the qualifying language elevates economic considerations in this case or that economic costs may trump the conservation objectives of the MSA.

As explained in Intervenor-Defendants' Opening Brief, Congress made clear that the MSA is intended to conserve ocean resources and the fisheries dependent on them. *See* Int.-Def. Op. Br. at 4-5. The case law interpreting the MSA reinforces the conservation focus of the statute. *See, e.g., Natural Res. Def. Council, Inc. v. Nat'l Marine Fisheries Serv.*, 421 F.3d 872, 879 (9th Cir. 2005) (quoting *Natural Res. Def. Council, Inc. v. Daley*, 209 F.3d 747, 753 (D.C.

Cir. 2000) ("under the [MSA], [NMFS] must give priority to conservation measures"); *Nat'l Coalition for Marine Conservation v. Evans*, 231 F. Supp. 2d 119, 143 (D.D.C. 2002) ("Conservation objectives have priority over other Magnuson-Stevens Act objectives, such as minimizing adverse economic impacts.").

The fact that those cases arose in the context of challenges to regulations intended to eliminate overfishing does not lend any support to Plaintiffs' contention that economic considerations take on added importance in a challenge to a regulation aimed at reducing bycatch. The cases state simply that conservation is the primary focus of the statute. *See Natural Res. Def. Council, Inc. v. Daley*, 209 F.3d 747 at 753; *Nat'l Coalition for Marine Conservation v. Evans*, 231 F. Supp. 2d at 143. Whether in the context of eliminating overfishing or minimizing bycatch, the agency is bound by that overall conservation goal, and other considerations cannot be made more important than it is.

Similarly, there is no support for Plaintiffs' contention that NMFS must show that measurable benefits of the individual monitoring and enforcement provisions of the Amendment 79 regulations outweigh their costs. *See* Plfs.' Reply Br. at 2, 13-14, 16. Neither the MSA, its implementing regulations, nor the case law require such a narrow balancing. *See* Int.-Def. Op. Br. at 28-29. "To the extent practicable" allows for the consideration of factors, including economic costs. It does not require the agency to balance economic costs on one side and measurable benefits on the other. As explained in Intervenor-Defendants' Opening Brief, the

approach advocated by Plaintiffs would tip the scale improperly away from conservation and toward the prevention of economic costs.  *See* Int.-Def. Op. Br. at 27-30.[1]

Further, there is no support for Plaintiffs' contention that the agency acted improperly by failing to implement their suggested alternatives to particular monitoring and enforcement provisions that are part of the Amendment 79 regulation.  *See* Plfs.' Reply Br. at 14-16, 19-20. The MSA allows NMFS to consider alternatives to the regulations it is considering.  *Cf. Nat'l Coalition for Marine Conservation v. Evans*, 231 F. Supp. 2d at 132-33 (upholding regulation against challenges pursuant to National Standards 7 and 8 in part on the grounds that the agency had considered alternatives to the regulation); 50 C.F.R. § 600.340(d) (suggesting "an evaluation of effects and costs, especially of differences among workable alternatives" under National Standard 7); 50 C.F.R. § 600.345(b)(1) (stating that, under National Standard 8, "[a]ll other things being equal, where two alternatives achieve similar conservation goals" the alternative with fewer economic impacts to fishing communities is preferable).  None of these cases or regulatory provisions, however, requires the agency to make a formal showing that each individual provision is the least restrictive or costly method suggested.

Plaintiffs rely primarily on *Blue Water Fisherman's Association v. Mineta*, 122 F. Supp. 2d 150 (D. D.C. 2000), to support their argument that NMFS did not fulfill its obligation to

---

[1] In determining whether a regulation minimizes bycatch "to the extent practicable," NMFS's regulations require consideration of a series of social, environmental, and economic factors.  *See* Int.-Def. Op. Br. at 24 (citing 50 C.F.R. § 600.350(d)(3)(i)).  Plaintiffs, however, cite this regulation as support for their argument that economic considerations are of primary importance. *See* Plfs.' Reply Br. at 12 n.11.  The regulation does allow consideration of economic effects but simply does not support the contention that they are more important than other factors or that measurable benefits must outweigh any costs imposed.

consider alternatives. *See* Plfs.' Reply Br. at 13-15. In that case, the Court overturned a monitoring requirement applied to the entire longline fishery where comments suggested applying the monitoring requirement to only a portion of the fishery in order to reduce the overall costs of the regulation. *See Blue Water Fishermen's Ass'n*, 122 F. Supp. 2d at 170. The Court found explicitly that "[t]he conservation benefit [of the monitoring requirement] could be derived only from a subset of fishers, namely, those fishers near established time/area closures." *Id.* at 171. By contrast, Plaintiffs in this case have not shown that their suggested alternatives would achieve the same conservation benefits as those implemented in the Amendment 79 regulation. As explained by the Federal Defendant, those alternatives would not achieve similar benefits and were properly rejected. *See* Fed. Def. Cross-Mot. for Summ. J. (Docket No. 26, Sept. 1, 2006) at 34-35.

Moreover, the agency in this case has done exactly what the Court in *Blue Water Fishermen's Association* required. NMFS did not apply the Amendment 79 regulation to the whole fishery. Instead, in an explicit effort to reduce the economic impacts of the rule, it exempted small boats. That choice reflects consideration of alternatives and an effort to achieve the greatest conservation benefit while being mindful of economic costs and other considerations. *See* 71 Fed. Reg. 17,362 at 17,363 (April 6, 2006).

Finally, Plaintiffs reiterate an argument made in their Opening Brief that the Amendment 79 regulation is not practicable because it might impose significant economic costs on an individual vessel in the fishery. *See* Plfs.' Reply Br. at 1-2, 21. As explained in Intervenor-Defendants' Opening Brief, the MSA simply does not require NMFS to ensure the economic viability of each individual vessel in a fishery. *See* Int.-Def. Op. Br. at 27-30. Plaintiffs' reading of "practicability" impermissibly elevates economic considerations above the conservation

mandate of the MSA and would weight NMFS's decisions away from minimizing bycatch and toward preventing economic costs. It also would drastically hinder NMFS's ability to manage effectively and would have the effect of allowing the worst actors to escape regulation on the grounds that their costs would be highest to comply with conservation measures. *See id.* at 29-30. Neither outcome is allowed by the MSA.

In the end, NMFS appropriately considered all of the relevant factors, including the costs to the industry, against the conservation backdrop of the MSA. In light of the substantial benefits of the Amendment 79 regulation, *see* Int.-Def. Op. Br. at 14-20, the agency reached a reasonable decision to increase retention and observation in an effort to minimize bycatch "to the extent practicable."

For these reasons and those stated in Intervenor-Defendants' Opening Brief, the Court should deny Plaintiffs' Motion for Summary Judgment and enter an order granting Intervenor-Defendants' Cross-Motion.

Dated this 4th day of October, 2006.

Respectfully submitted,

 */s/ Eric P. Jorgensen*
Eric P. Jorgensen (D.C. Bar No. 88897)
Michael LeVine (Alaska Bar No. 0405032) (*pro hac vice*)
Katharine S. Glover (Alaska Bar No. 0606033)
EARTHJUSTICE
325 Fourth Street
Juneau, Alaska 99801
Phone: (907) 586-2751
Fax:    (907) 463-5891
Email: ericj@earthjustice.org

Janis Searles (Alaska Bar No. 9606027) (*pro hac vice*)
OCEANA
4189 SE Division Street, North Suite
Portland, Oregon 97202
Phone:  (503) 234-4552
Fax:      (503) 230-0903
Email:    jsearles@oceana.org

*Attorneys for Intervenor-Defendants Oceana and
Alaska Marine Conservation Council*

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2006, a copy of INTERVENOR-DEFENDANTS' REPLY SUPPORTING THEIR CROSS-MOTION FOR SUMMARY JUDGMENT was served electronically on:

**Michael Richard Eitel**
U.S. DEPARTMENT OF JUSTICE
Environmental & Natural Resources Division
Ben Franklin Station,
P.O. Box 7369
Washington, DC 20044-7369
Michael.Eitel@usdoj.gov

**David Earl Frulla**
**Shaun Michael Gehan**
COLLIER SHANNON SCOTT, PLLC
3050 K Street, NW, Suite 400
Washington, DC 20007
dfrulla@kelleydrye.com
sgehan@kelleydrye.com

**Daniel Scott Blynn**
KELLEY DRYE & WARREN, LLP
3050 K Street, NW, Suite 400
Washington, DC 20007
dblynn@kelleydrye.com


  */s/ Eric P. Jorgensen*
Eric P. Jorgensen