UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEGACY FISHING COMPANY, *et al.* ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE HONORABLE CARLOS GUTIERREZ, ) <br> ) <br> Defendant. ) | No. 1:06CV00835 JR |

**FISHING COMPANY OF ALASKA'S MOTION
TO STAY JUDGMENT PENDING APPEAL**

For the reasons set forth in its supporting Memorandum of Law, Plaintiff The Fishing Company of Alaska ("FCA") respectfully moves this Court, pursuant to Fed. R. Civ. P. 62(c), for an order granting it a brief stay of the Court's March 20, 2007 judgment pending resolution of FCA's previously filed appeal. More specifically, FCA seeks a stay of enforcement of the following three specific components of the monitoring and enforcement requirements contained in regulations implementing Amendment 79 to the Fishery Management Plan ("FMP") for the Groundfish Fishery of the Bering Sea and Aleutian Islands: (1) the prohibition on "mixing" of hauls, (2) the ban on operation of more than one flow scale, and (3) the requirement of a single point of observation (collectively, the "M&E requirements"). *See* 71 Fed. Reg. 17362, 17382 (Apr. 6, 2006) (codified at 50 C.F.R. § 679.27(j)(3)(ii), (iii)). FCA's Motion does not include all other requirements of Amendment 79 and its implementing regulations, such as Amendment 79's groundfish retention standards or of the monitoring and enforcement provisions not identified in this Motion.

Pursuant to LCvR 7(m), counsel for FCA, the federal Defendant, and the intervenor-Defendants have conferred regarding FCA's motion; and counsel for the federal Defendant and the intervenor-Defendants oppose it.

FCA is amenable to oral argument if the Court believes that a hearing will assist it in deciding this matter.

Dated: May 4, 2007

Respectfully submitted,

_____/s/_____
David E. Frulla
D.C. Bar No. 414170
Shaun M. Gehan
D.C. Bar No. 483720
Daniel S. Blynn
D.C. Bar No. 488934
Kelley Drye & Warren LLP
3050 K Street, N.W. – Suite 400
Washington, D.C. 20007
Telephone: (202) 342-8400
Facsimile: (202) 342-8451

*Attorneys for The Fishing Company of Alaska*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEGACY FISHING COMPANY, *et al.* )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THE HONORABLE CARLOS GUTIERREZ, )<br>)<br>Defendant. )<br>) | No. 1:06CV00835 JR |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF
FISHING COMPANY OF ALASKA'S MOTION TO
STAY JUDGMENT PENDING APPEAL**

Pursuant to Fed. R. Civ. P. 62(c) and LCvR 7(a), The Fishing Company of Alaska ("FCA") respectfully submits this memorandum of points and authorities in support of its Motion to Stay Judgment Pending Appeal.[1] This motion accompanies FCA's previously filed Notice of Appeal. Specifically, FCA seeks a stay preventing enforcement of three specific components of Amendment 79's monitoring and enforcement provisions: (1) the prohibition on "mixing" of hauls, (2) the ban on operation of more than one flow scale, and (3) the requirement of a single point of observation (collectively, the "M&E requirements"). *See* 71 Fed. Reg. 17362, 17382 (Apr. 6, 2006) (codified at 50 C.F.R. § 679.27(j)(3)(ii), (iii)). These are not the entirety of the M&E requirements contained in Amendment 79, but are instead the requirements added into regulations by Defendant's designees after the North Pacific Fishery Management Council (the "Council") took final action on its recommendations for Amendment 79 and its implementing regulations.

---

[1] Plaintiff Legacy Fishing Company is not participating in FCA's appeal or motion to stay this Court's judgment.

A stay pending appellate adjudication of this Court's March 20, 2007 memorandum Opinion and Order (Docket Nos. 40 and 41[2]) is appropriate in this case because FCA has a substantial likelihood of success on appeal and will suffer irreparable harm if a stay is not granted. Absent a stay, FCA will be forced to retrofit its vessels substantially to comply with the M&E requirements at issue – the very result it sought to avoid by filing this lawsuit in the first instance – thereby rendering the appeal of this Court's judgment moot in significant part. Moreover, there will be no harm from such a stay to the federal defendant ("the Government") or the intervenor-defendants, Alaska Marine Conservation Council and Oceana, Inc. and a stay is in the public interest. This case raises serious legal questions and the balance of the equities favors maintaining the status quo during the course of FCA's appeal. The stay requested would, moreover, permit Amendment 79's bycatch reduction program to proceed.

For these reasons, this Court should exercise its discretion and stay its judgment and enforcement of the three M&E requirements at issue while FCA's appeal remains pending.

## BACKGROUND

This case involves a challenge to certain aspects of Amendment 79 – a rule designed to create economic incentives to reduce "bycatch" (fish harvested but not kept for sale or personal use for economic or regulatory reasons) by requiring annual stepwise increases to the proportion of total fish vessels are required to retain. FCA did not challenge these so-called retention standards, but rather focused its arguments on three discrete and legally deficient M&E requirements it identified within the regulation. *See* Complaint (Docket No. 1) at ¶¶ 48, 104-115, 137(c). Specifically, FCA challenged the Government's uncontested development of new substantive management measures that had not been considered or recommended by the Council.

---

[2]     All citations to the Opinion will be to the unpublished decision available at *Legacy Fishing Co v. Gutierrez*, No. 06-0835, 2007 U.S. Dist. LEXIS 19460 (D.D.C. March 20, 2007).

**FCA's Memorandum of Points and Authorities in Support of Motion to Stay– Page 2**
DC01/BLYND/278360.4

*Id.* at ¶¶ 116-127. FCA also alleged that these new M&E measures, the costs of which run into the millions of dollars and reduce vessel productivity by thirty percent or more, are not "practicable" within the meaning of Magnuson-Stevens Fishery Conservation and Management Act ("MSA") National Standard Nine, 16 U.S.C. § 1851(a)(9). In addition, the new M&E requirements create undue incentives to engage in unsafe and potentially life-threatening practices, such as retaining cod ends on deck or "short-wiring" tows, which decrease vessel maneuverability, implicating MSA National Standard Ten, 16 U.S.C. § 1851(a)(10). *See id.* at ¶¶ 128-137. These measures also were alleged to violate National Standards Seven and Eight, 16 U.S.C. § 1851(a)(7), (8), because they impose unnecessary costs and absolutely no less costly or more efficient alternatives were considered. *See id.*

All parties submitted cross-motions for summary judgment and on March 20, 2007, this Court found for the Government on all counts and granted its motion for summary judgment.

## ARGUMENT

### I. THIS COURT HAS THE AUTHORITY TO STAY ITS JUDGMENT AND ENFORCEMENT OF AMENDMENT 79 PENDING FCA'S APPEAL.

Under Fed. R. Civ. P. 62(c), this Court has the power to stay its judgment and prohibit enforcement of Amendment 79 pending appeal. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); Fed. R. Civ. P. 62(c) ("When an appeal is taken from . . . [a] final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal."). Although a stay generally is granted to preserve the status quo, district courts have the discretion to issue a stay even if it would alter the status quo while an appeal is pending. *See Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Ortho Pharm. Corp. v. Amgen, Inc.*, 887 F.2d 460, 464

(3d Cir. 1989) ("in furtherance of preserving the integrity of the appeal, an order entered under Fed.R.Civ.P. 62(c) to modify a preliminary injunction may alter the status quo.").

The burden is on the movant to show (1) that it is likely to prevail on the merits of its appeal; (2) that it would suffer irreparable harm absent a stay; (3) that the issuance of a stay would not substantially harm other parties interested in the proceedings; and (4) that a stay is in the public interest. *Holiday Tours*, 559 F.2d at 843; *Center for Int'l Envtl. Law v. Office of the United States Trade Representative*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003). These stay factors "contemplate individualized judgments in each case, [and] the formula cannot be reduced to a set of rigid rules." *Hilton*, 481 U.S. at 777. Thus, for example, "[t]he movant is not always required . . . to demonstrate a high probability of success on the merits. Instead, 'probability of success is inversely proportional to the irreparable injury evidenced. A stay may be granted with either a high probability of success and some injury, or *vice versa*.'" *Center for Int'l Envtl. Law*, 240 F. Supp. 2d at 22 (quoting *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)); *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995) ("If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak."). As Your Honor has held, "[a] stay is appropriate [where the] case raises a serious legal question and the balance of equities favors maintaining the status quo during the appeal." *Citizens Coal Council v. Babbitt*, No. 00-0274, 2002 U.S. Dist. LEXIS 26462, at *2 (D.D.C. June 5, 2002) (Robertson, J.) (granting stay pending appeal of summary judgment ruling); *Shays v. Fed. Election Comm'n*, 340 F. Supp. 2d 39, 45 (D.D.C. 2004) (same). Each of these factors weighs heavily in favor of a stay being issued here.

## II. FCA HAS A STRONG LIKELIHOOD OF SUCCESS ON APPEAL AND PRESENTS A SUBSTANTIAL CASE ON THE MERITS.

The first factor in the stay analysis is whether FCA will prevail on the merits of the appeal. "The court is not required to find that ultimate success by the movant is a mathematical probability, and . . . may grant a stay even though its own approach may be contrary to the movant's view of the merits." *Holiday Tours*, 559 F.2d at 843.[3] In fact, in this Circuit, FCA need not even show that its appeal has a more than likely chance of succeeding. *See id.* at 844 (expressly rejecting "the view that a 50% plus probability is required"); *accord Republic Indus., Inc. v. Cent. Pennsylvania Teamsters Pension Fund*, 537 F. Supp. 1036, 1036-37 (E.D. Pa. 1982) (granting stay after dismissing plaintiff's constitutional challenge, seeking injunctive relief, to new statute and noting that in stay proceedings, "some courts require movant to show only the 'non-frivolity' of the appeal"). In addition, under this Court's precedent, a stay may be warranted if the movant can demonstrate a "substantial case on the merits." *Center for Int'l Envtl. Law*, 240 F. Supp. at 22 (granting stay although defendants had not shown a high probability of success on the merits). Based on the record and applicable case law, FCA respectfully suggests it has a strong likelihood of succeeding in its appeal and, at the very least, has presented a substantial case on the merits.

FCA respectfully believes the Court's judgment to be in error. For example, the MSA, 16 U.S.C. §§ 1801 *et seq.*, does not, as the decision of this Court implies, *see Legacy Fishing*, 2007 U.S. Dist. LEXIS 19460, at *14-22, grant authority to any person or entity other than a duly constituted regional fishery management council to submit regulations; a council, in its *sole*

---

[3]   *See also Shays*, 340 F. Supp. 2d at 45 ("This does not mean that the [stay] applicant's chances of success on appeal must appear as a 'mathematical probability.'"); *First Savings Bank, F.S.B. v. First Bank Sys., Inc.*, 163 F.R.D. 612, 615 (D. Kan. 1995) ("To obtain a stay, the movant need not always show a strong likelihood or high probability of success on the merits.").

**FCA's Memorandum of Points and Authorities in Support of Motion to Stay– Page 5**
DC01/BLYND/278360.4

discretion, submits regulations it "deems necessary and appropriate." 16 U.S.C. § 1853(c); *see also id.* § 1852(h)(6) (providing councils authority to "conduct any other activities which are required by, or provided for in, this Act or which are necessary and appropriate to the forgoing functions," including the development of fishery management plans and amendments thereto). The MSA further requires that all plans and amendments "include a fishery impact statement . . . which shall assess, specify, and describe the likely effects, if any, of the conservation and management measures on participants in the fisheries and fishing communities affected by the plan or amendment." *Id.* § 1853(a)(9)(A). The facts in this case show that the Council did not recommend the additional M&E measures challenged by FCA in this litigation; did not authorize its agent to submit new and unconsidered measures on its behalf; did not, as a body corporate, act to recommend or submit these provisions to the Secretary; and did not "assess, specify, [or] describe the likely effects" of these measures. In fact, the Council neither considered nor recommended these provisions in the version of Amendment 79 that was submitted to the Secretary.

With all due respect, FCA disagrees with the Court's analysis and application of *Oceana v. Evans*, No. 04-0811, 2005 U.S. Dist. LEXIS 3959 (D.D.C. Mar. 9, 2005). *See Legacy Fishing*, 2007 U.S. Dist. LEXIS 19460, at *19-22. In *Oceana*, the court found that the Secretary did "an end run around the Council" by promulgating a regulation that effectively allowed the Secretary to usurp the council rule-making process mandated by the MSA. *See Oceana*, 2005 U.S. Dist. LEXIS 3959, at *87-94. The Secretary had tried to put in place a new requirement inconsistent with the recommendation of a fishery management council, thus avoiding the procedurally proper scheme under the MSA and the important substantive insight and consideration by the

Council. *See id.* Judge Huvelle held that that was impermissible under the MSA and granted summary judgment on that count to the plaintiffs. *Id.* at *94.

Here, this Court was faced with a similar situation. As FCA explained in detail in its motion for summary judgment, (Docket No. 16 at 12, 24-25), the Council carefully considered and specifically chose the set of M&E requirements it felt necessary to implement Amendment 79. Subsequently, the Secretary, through NMFS, drafted regulations which added the specific additional M&E requirements challenged by FCA, and submitted them to the Council's Executive Director on May 24, 2005. (A.R. 97.) This act by NMFS supplanted the Council's decision about "how much was enough" in terms of the M&E requirements. ***The very next day***, without any involvement of or consultation with the Council, the Executive Director re-submitted the revised and final version of Amendment 79's implementing regulations to the Secretary who, not surprisingly, approved the rule. (*Id.* 66, 66-02.) This Court's decision would in essence grant NMFS a carte blanche to enact any conservation and management measure that is not directly contrary to the provisions chosen by a regional fishery management council, so long as its Executive Director, whose salary and budget are controlled by NMFS, knowingly or unknowingly, effects a *pro forma* submission of the regulations. *See Legacy Fishing*, 2007 U.S. Dist. LEXIS 19460, at *21-22. As in this case, such a process also evades the MSA requirement that all conservation and management measures be subject to an impact analysis in the fishery management plan ("FMP") or amendment itself. *See* 16 U.S. C. §1853 (a)(9).[4] FCA therefore

---

[4] It bears noting that this provision recently was amended to strengthen the analytical requirements and requirement for councils to explore mitigating alternatives. *See* MSA Reauthorization Act of 2006, § 101(b), P.L. 109-478 (H.R. 5946) (signed into law on January 12, 2007) (adding a requirement that fishery impact statements "analyze the likely effects, if any, including the cumulative conservation, economic, and social impacts, of the conservation and management measures on, and possible mitigating measures for" fishermen and fishing communities).

**FCA's Memorandum of Points and Authorities in Support of Motion to Stay– Page 7**
DC01/BLYND/278360.4

believes that this holding sets a dangerous precedent and is inconsistent with the law, particularly as amended.

Furthermore, with respect to its claims regarding the Government's compliance with the National Standards for fishery conservation and management, FCA suggests that this Court's opinion missed the essential point. As FCA tried to make clear, it was not challenging the legitimacy of the Secretary's authority to promulgate Amendment 79's groundfish retention standards as suggested in the opinion. *Accord Legacy Fishing*, 2007 U.S. Dist. LEXIS 19460, at *24 ("Plaintiffs claim that the agency has failed to demonstrate that the expected benefits of the bycatch limitations outweigh or justify the costs imposed on the industry, in violation of National Standard 7, 8, and 9.") Rather, its sole argument was that the additional M&E requirements added by NMFS after the Council had taken final action on Amendment 79, and *not* the retention standard itself, violated these National Standards. These three specific M&E requirements were unduly costly, and, therefore, "impracticable" within the meaning of the law. Further, the record contained absolutely no analysis showing why these three specific M&E requirements were necessary or whether less costly alternatives to these measures were feasible. The Opinion, however, fails to address these claims at all. *Compare Legacy Fishing*, 2007 U.S. Dist. LEXIS 19460, at *22-29 (addressing the practicability and alternatives considered with respect to only the retention standard program).

For these reasons, among others, FCA has shown that it will succeed on the merits of its appeal or, at the very least, that it presents a serious case on the merits.

### III. FCA WILL SUFFER IRREPARABLE HARM ABSENT A STAY.

The second factor in the Court's stay determination is whether FCA will suffer irreparable injury if a stay pending appeal is not awarded. The loss of an appellate right is in and

of itself irreparable injury justifying a stay. *See McDaniel v. Sanchez*, 448 U.S. 1318, 1322 (1980) (granting a stay where appeal would become moot without one); *Center for Int'l Envtl. Law*, 240 F. Supp. at 22-23 (the fact that an appeal may become moot absent a stay can constitute irreparable harm); *In re Advanced Mining Sys.*, 173 B.R. 467, 469 (S.D.N.Y. 1994) (granting stay where "denial of a stay would moot the appeal and deny the [movant] any recovery. That is a quintessential form of prejudice to the [movant]."); *J. Weingarten, Inc. v. Potter*, 233 F. Supp. 833, 838-39 (S.D. Tex. 1964).[5] The Supreme Court also has found irreparable harm where, absent a stay, an appellant "will be required immediately to expend substantial money . . . and that this expenditure will be irretrievable." *McDaniel*, 448 U.S. at 1322. The harm FCA will suffer here absent a stay is imminent, irreparable, and "peculiar, going beyond pure economic injuries," and, accordingly, this factor weighs decidedly in favor of a stay. *Salt Pond Assocs. v. United States Army Corps of Engineers*, 815 F. Supp. 766, 784 (D. Del. 1993) ("The immediate irreparable injury that [movant] is subject to if the Court does not stay the pond restoration requirements imposed by the Government extends well beyond the significant cost of actually restoring the ponds.").

In order to bring its vessels in compliance with the Amendment 79 M&E requirements that FCA challenged in this case, FCA will have to spend millions of dollars – money which cannot be recovered from the Government should FCA prevail on appeal – to make significant material alterations and essentially rebuild its vessels;[6] and, in order to meet Amendment 79's

---

[5] *See also Stop H-3 Ass'n v. Volpe*, 353 F. Supp. 14, 18 (D. Haw. 1972) ("Traditionally, the irreparable injury contemplated by Rule 62(c) is that which will make the appeal moot."), *rev'd on other grounds*, 533 F.2d 434 (9th Cir. 1976).

[6] The retrofits FCA will be forced to undertake will, moreover, permanently change the characteristics of its vessels. Aside from the monetary costs of these retrofits, they will entail a whole new production scheme which may limit the productivity of the vessel over the long run.

**FCA's Memorandum of Points and Authorities in Support of Motion to Stay– Page 9**
DC01/BLYND/278360.4

January 2008 implementation date, these retrofits will have to begin almost immediately while FCA's appeal still is pending before the D.C. Circuit. *See* Plaintiffs' Memorandum of Points and Authorities in Support of its Motion for Expedited Review (Docket No. 9) at 4-6.

Moreover, once the vessels are rebuilt, it would be impractical for FCA to spend even more money and lose even more fishing time to restore them to their original, more productive design in the event that FCA succeeds in its appeal. FCA is presented with a classic Hobson's choice: either make substantial outlays to bring its vessels into compliance with Amendment 79 – a result which effectively moots the appellate proceedings regarding the three specific M&E requirements – or simply not fish or operate its vessels, thus losing unquantifiable amounts of unrecoverable business, during the pendency of appeal. By appealing, FCA seeks to avoid exactly what it will be required to do absent a stay.

Courts presented with situations similar to the one that FCA faces have not hesitated to grant a brief stay pending appeal. In *J. Weingarten*, for example, the district court issued a stay pending appeal after it dismissed the plaintiff's case, which sought injunctive relief. *J. Weingarten*, 233 F. Supp. at 838-39. In that case, the plaintiff sought to enjoin the opening and counting of 43 ballots cast, which could determine the outcome of a vote. *Id.* at 836. Although the court held that it did not have jurisdiction to decide the issue, it granted "an injunction pending appeal [of the jurisdiction issue] . . . pursuant to the provisions of Rule 62(c)." *Id.* at 838. The court recognized,

> [t]his entire case revolves around the proposed activity being enjoined pending appeal, the counting of the ballots. The Court will definitely have jurisdiction to enjoin such activity if plaintiff's construction . . . eventually prevails. . . . [P]laintiff's prevailing on appeal would gain it a hollow victory indeed, one of mere academic interest, for the activity of which it complains would have long

---

These attributes go beyond monetary considerations and represent permanent, substantive changes for which there is no adequate remedy at law.

**FCA's Memorandum of Points and Authorities in Support of Motion to Stay– Page 10**
DC01/BLYND/278360.4

since occurred. I cannot believe that his [sic] is or ever will be the state of the law.

*Id.* at 839. Like the plaintiff in *J. Weingarten*, if FCA is forced to retrofit its vessels in order to comply with the rule it is challenging, any favorable decision on appeal would be "a hollow victory indeed."

As noted above, Amendment 79 will become effective in January 2008; it is almost certain that FCA's appeal in this case still will be pending at that time even if the D.C. Circuit considers it on an expedited basis. Thus, the regulation may begin to be enforced against FCA before a final determination that the regulation even is valid, and, unless FCA retrofits its vessels starting almost immediately, substantial fines and penalties may be levied against it or it may have to forgo fishing opportunities in 2008. Docket No. 9 at 4-5. Furthermore, there are only limited windows of time in which such work can be done. *Id.* at 6. As a result, the necessity of undertaking these modifications in order to have compliant vessels on the water for the 2008 fishing season would not be alleviated unless a stay in this matter were implemented. Furthermore, FCA cannot wait to begin the retrofits, even if an appellate decision were somehow to come in late 2007. Thus, in the present matter, success on appeal would be little more than a Pyrrhic victory, unless the M&E requirements at suit are stayed pending appeal.

In balancing the equities, moreover, it bears emphasis that FCA is not seeking a stay of the Amendment 79 groundfish retention standards, nor of most of the M&E requirements contained in the implementing regulations. Further, the record in this case shows that, on a fleet-wide basis, the non-American Fisheries Act trawl catcher processor sector ("non-AFA fleet") already currently meets and exceeds the retention standard of 65 percent prescribed for 2008, the first year of Amendment 79's implementation. More importantly, as this Court recognized, FCA's fleet, which would be forced to bear the lion's share of vessel retrofit costs, has a

**FCA's Memorandum of Points and Authorities in Support of Motion to Stay– Page 11**
DC01/BLYND/278360.4

retention rate that already exceeds the highest standard, 85 percent (a standard not be required to be met until 2011 in any event), prescribed by the regulation. *Legacy Fishing*, 2007 U.S. Dist. LEXIS 19460, at *8. No important conservation objectives could thus be threatened if a brief stay were to issue; on the other hand, serious harms to FCA will follow if the status quo is not maintained during the appeals process.

Finally, with respect to the "no mixing" sub-regulation, while it is true that this Court noted that alternatives exist to maintaining cod ends on deck, with the attendant vessel stability concerns, the nearest practicable alternative to a permanent reduction in fishing (but which results in productivity losses of thirty percent or more) recognized by the Court is "short-wiring." *See id.* at *30. Although the Court further noted that his method was offered by NMFS as an alternative practice, *see id.*, it failed to mention that this practice creates its own safety issues, as pointed out by FCA in its comments on the proposed rule. Thus, without a stay pending appeal, all vessels in the non-AFA fleet will have to choose between suffering irretrievable losses in fishing and productivity, or engage in practices which are recognized to be unsafe by the Coast Guard and/or the industry.

These harms are irreparable within the meaning of the law.

### IV.    OTHERS WILL NOT BE HARMED IF THE COURT GRANTS A STAY.

The third factor to be considered by the Court is whether other parties interested in this action would substantially be harmed by a stay. "As with irreparable harm to the movant, we test these harms [harm to others] for substantiality, likelihood of occurrence and adequacy of proof." *Cuomo*, 772 F.2d at 977 (finding that there was no evidence that others would be harmed by issuance of a stay). This factor weighs in favor of a stay.

As already described above, *see supra* at 11-12, if a stay issues and the three specific M&E requirements of Amendment 79 are not enforced during the pendency of the appeal, there is no conservation harm nor harm to any other party. The stay would not impact the Amendment 79 retention standards, nor many of the M&E requirements themselves. The non-AFA fleet already comfortably satisfies the 65 percent retention standard for 2008 in the aggregate. Moreover, it is recognized that FCA, the movant, already far exceeds this standard, and is currently meeting the highest standard called for by Amendment 79 of 85 percent. Thus, all relevant conservation standards will continue to be met, and no party can claim a particularized harm from the temporary and targeted stay necessary to insure that FCA's right to a meaningful appeal is preserved.

## V.   A STAY IS IN THE PUBLIC INTEREST

The fourth and final factor to be considered by the Court when analyzing FCA's request for a stay is where the public interest lies. "The general public has an interest in seeing that laws are administered reasonably, in accordance with law and not arbitrarily." *Michigan Citizens for an Independent Press v. United States Attorney General*, No. 88-2322, 1988 WL 90388, at *7 (D.D.C. Aug. 17, 1988) (granting stay for "a brief period"); *Blackman v. District of Columbia*, 382 F. Supp. 2d 3, 12 (D.D.C. 2005) (granting injunctive relief and noting that the public has an interest in the Government following proper statutory or regulatory procedure).

The crux of the underlying case is that the Government failed to abide by the proper rule-making process, both procedurally and substantively. Thus, the public's interest would be served if a stay issued while the appellate court considers the merits of FCA's appeal. Moreover, litigants and the public generally have an interest in a meaningful opportunity to appeal. This opportunity effectively would be denied if the Court were not to grant this stay.

## CONCLUSION

For the foregoing reasons, FCA respectfully requests that this Court grant its motion to stay its judgment in this case and enjoin enforcement of the three specific M&E requirements at suit for a brief period of time while its appeal is pending.

Dated: May 4, 2007					Respectfully submitted,


					_____/s/_____
					David E. Frulla
					D.C. Bar No. 414170
					Shaun M. Gehan
					D.C. Bar No. 483720
					Daniel S. Blynn
					D.C. Bar No. 488934
					Kelley Drye & Warren LLP
					3050 K Street, N.W. – Suite 400
					Washington, D.C. 20007
					Telephone: (202) 342-8400
					Facsimile: (202) 342-8451

					*Attorneys for The Fishing Company of Alaska*

**FCA's Memorandum of Points and Authorities in Support of Motion to Stay– Page 14**
DC01/BLYND/278360.4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEGACY FISHING COMPANY, *et al.* | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 1:06CV00835 JR<br>) |
| THE HONORABLE CARLOS GUTIERREZ, | )<br>)<br>) |
| Defendant. | )<br>) |

**[PROPOSED] ORDER GRANTING FISHING COMPANY OF ALASKA'S
MOTION TO STAY JUDGMENT PENDING APPEAL**

Plaintiff The Fishing Company of Alaska ("FCA") has filed a motion to stay this Court's March 20, 2007 judgment as it pertains to the enforcement of three specific components of Amendment 79's monitoring and enforcement provisions while its appeal to the United States Court of Appeal for the District of Columbia Circuit is pending. Based on the parties' submissions, it is hereby ORDERED this _____ day of _____, 2007, that FCA's Motion to Stay Judgment Pending Appeal is GRANTED. Accordingly, the Federal Defendant shall be and hereby is enjoined, during the pendency of FCA's appeal, from enforcing the following three specific components of the monitoring and enforcement requirements contained in regulations implementing Amendment 79 to the Fishery Management Plan ("FMP") for the Groundfish Fishery of the Bering Sea and Aleutian Islands: (1) the prohibition on "mixing" of hauls, (2) the ban on operation of more than one flow scale, and (3) the requirement of a single point of observation (collectively, the "M&E requirements"). *See* 71 Fed. Reg. 17362, 17382 (Apr. 6,

2006) (codified at 50 C.F.R. § 679.27(j)(3)(ii), (iii)). All other requirements of Amendment 79 and its implementing regulations shall remain in place.


Date: _____     _____
                                          Honorable James Robertson
                                          United States District Judge