UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEGACY FISHING COMPANY; THE
FISHING COMPANY OF ALASKA, INC.,

                    Plaintiffs,

      v.

THE HONORABLE CARLOS GUTIERREZ,
in his official capacity as Secretary of
Commerce,

                    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civ. No. 06-0835 (JR)

**OPPOSITION TO PLAINTIFFS'
MOTION TO STAY JUDGMENT
PENDING APPEAL**

TABLE OF CONTENTS

PAGE

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    Injunctive Relief Pending Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   The Applicability of the Administrative Procedure Act to Motions for Injunctive Relief
      Pending Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    The Relief Plaintiffs Request Is Not Available Under Applicable Law . . . . . . . . . . . . . . . . 4

      A.    The Magnuson-Stevens Act Bars Plaintiffs From Obtaining Injunctive Relief Pending
            Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    Even Were Interim Injunctive Relief Available Under the Magnuson-Stevens Act,
            the Judiciary May Not Enjoin Executive Branch Enforcement Measures . . . . . . . . 8

II.   Should the Court Reach the Merits of Plaintiffs' Motion, the Motion Should be Denied . . 10

      A.    Plaintiffs Fail To Show A Likelihood of Success On The Merits . . . . . . . . . . . . . . 10

      B.    Plaintiffs Fail To Demonstrate That Irreparable Harm Is Sufficiently Likely And
            That An Injunction Will Not Harm Others . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      C.    The Public Interest Weighs Heavily Against The Issuance Of Injunctive Relief In
            This Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

CASES                                                                                    PAGE

A.O. Smith Corp. v. FTC, 530 F.2d 515, 527 (3rd Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Adams v. Nagle, 303 U.S. 532, 542 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Am. Cetacean Soc. v. Baldrige, 604 F. Supp. 1411, 1414 (D.D.C. 1985) . . . . . . . . . . . . . . . . . . . . 11

Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 545 (1987) . . . . . . . . . . . . . . . . . . . . . . . . 17

Apotex v. Food and Drug Admin., 2006 WL 1030151, *7
  (D.D.C. Apr. 19, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11, 12, 13, 14, 17

Associated Fisheries of Maine v. Daley, 127 F.3d 104, 109 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . 3

Block v. North Dakota, 461 U.S. 273, 285 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Bradshaw v. Veneman, 338 F. Supp. 2d 139, 141 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Brown v. GSA, 425 U.S. 820, 833 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cape Cod Commercial Hook Fishermen's Ass'n v. Daley, 30 F. Supp. 2d 111, 114 n. 11
  (D. Mass. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) . . . . . . . 14, 17

Chevron USA, Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984) . . . . . . . . . . . . . . 12

Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971) . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Coastal Corp. v. Texas Eastern Corp., 869 F.2d 817, 820 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . 10

Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Community for Creative Non-Violence v. Pierce, 786 F.2d 1199, 1201 (D.C. Cir. 1986) . . . . . . . . 9

Conservation Law Found. v. Evans, 209 F. Supp. 2d 1, 12 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . 18

Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 978 (D.C. Cir. 1985) . . 2, 14, 15, 16, 18

Dubois v. Thomas, 820 F.2d 943, 948 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Favia v. Indiana University of Pennsylvania, 7 F.3d 332, 337 (3rd Cir. 1993) . . . . . . . . . . . . . . . . 4

Fund for Animals v. Norton, 374 F. Supp. 2d 91, 98 (D.D.C. 2005), aff'd, 472 F.3d 872
  (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Granny Goose Foods v. Brotherhood of Teamsters, 415 U.S. 423, 442-43 (1974) . . . . . . . . . . . 2, 3

Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953) . . . . . . . . . . . . . . . 13

Hamlin Testing Labs v. U.S. Atomic Energy Comm'n, 337 F.2d 221, 222-23 (6th Cir. 1964) . . . . 20

Harmon Cove Condominium Ass'n v. Marsh, 815 F.2d 949, 952-53 (3d Cir. 1987) . . . . . . . . . . . . 9

Heckler v. Chaney, 470 U.S. 821, 831 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Hodges v. Shalala, 127 F. Supp. 2d 790, 791 (D.S.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Idaho Sporting Congress v. U.S. Forest Serv., 92 F.3d 922 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . 6

In re GTE Serv. Corp., 762 F.2d 1024 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Kramer v. Mosbacher, 878 F.2d 134, 137 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Lands Council v. Packard, 391 F. Supp. 2d 869, 871 (D. Idaho 2005) . . . . . . . . . . . . . . . . . . . . . . 12

Legacy Fishing Co. v. Gutierrez, 2007 WL 861143 (D.D.C. Mar. 20, 2007) . . . . . . . . . . 1, 11, 12, 20

Louisiana Ass'n of Indep. Producers v. FERC, 958 F.2d 1101, 1117 (D.C. Cir. 1992) . . . . . . . . . . . 3

Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 376 (1989) . . . . . . . . . . . . . . . . . . . . . . 3

Mississippi Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 625-26
  (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Nat'l Trust for Historic Pres. v. Dole, 828 F.2d 776, 781 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . 3

Neighbors for Rational Dev. v. Norton, 379 F.3d 956, 960-65 (10th Cir. 2004) . . . . . . . . . . . . . . . 4

New Jersey Dep't of Envt'l Protection v. Gloucester Envt'l Mgmt. Services, 668 F. Supp. 404, 407
  (D.N.J. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Northern Wind v. Daley, 200 F.3d 13, 17 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Oceana v. Evans, 2005 WL 555416 (D.D.C. Mar. 9, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n, 812 F.2d 288, 290 (6th Cir. 1987) . . . 6, 14

Oregon Trollers v. Gutierrez, 452 F.3d 1104, 1119 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Pacific Coast Fed'n of Fishermen's Ass'n v. Secretary of Commerce, 494 F. Supp. 626, 628 -629 (N.D. Cal. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Protect Our Water v. Flowers, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . 13

Sampson v. Murray, 415 U.S. 61, 69 n. 15 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Scripps-Howard Radio v. FCC, 316 U.S. 4, 9-10 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Serono Labs. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Shays v. FEC, 340 F. Supp. 2d 39, 46 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Southern Co. Services v. FCC, 313 F.3d 574, 580 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Superior Trucking Co. v. United States, 614 F.2d 481, 484 n.8 (5th Cir. 1980) . . . . . . . . . . . . . . 5, 6

Turtle Island Restoration Network v. Dep't of Commerce, 438 F.3d 937, 944 (9th Cir. 2006) . . . . . 6

Underwater Exotics, Ltd. v. Secretary of the Interior, 1994 WL 80878 (D.D.C. Feb. 28, 1994) . . . . 3

United States v. Batchelder, 442 U.S. 114, 124 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Mead, 533 U.S. 218, 226-27 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Oakland Cannabis Buyers' Coop, 532 U.S. 483, 497 (2001) . . . . . . . . . . . . . . . . . 18

United States v. Texas, 523 F. Supp. 703. 729 (E.D. Tex. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Valona v. U.S. Parole Comm'n, 165 F.3d 508, 510 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Vasile v. Dean Witter Reynolds, 205 F.3d 1327 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 17

Virginian R. Co. v. Railway Employees, 300 U.S. 515, 551 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . 18

Weinberger v. Romero-Barcelo, 456 U.S. 305, 312-313 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

WMATA v. Holiday Tours, Inc., 559 F.2d 841 (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . 10, 13, 14, 16

World Wildlife Fund v. Hodel, 1988 WL 66193 (D.D.C. June 17, 1988) . . . . . . . . . . . . . . . . . . . . . . 4

Yakus v. United States, 321 U.S. 414, 440 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Ysasi v. Rivkind</u>, 856 F.2d 1520 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## <u>FEDERAL STATUTES</u>

5 U.S.C. § 705  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7
5 U.S.C. § 706  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

16 U.S.C. §§ 1801-1883  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18
16 U.S.C. § 1801(b)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
16 U.S.C. § 1801(c)(3)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
16 U.S.C. § 1802(2)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
16 U.S.C. § 1855(f)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
16 U.S.C. § 1855(f)(1)(A)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5
16 U.S.C. § 1855(f)(4)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
16 U.S.C. § 1857  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12
16 U.S.C. § 1862(f)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
16 U.S.C. § 1862(g)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
16 U.S.C. § 1862(i)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## <u>LEGISLATIVE HISTORY</u>

S. Conf. Rep. 94-711 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
141 Cong. Rec. 25420 (Sept. 18, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
142 Cong. Rec. 10810 (Sept. 18, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## **INTRODUCTION**

On March 20, 2007, this Court granted Defendant's Motion for Summary Judgment, upholding the National Marine Fisheries Service's ("NMFS")[1] groundfish retention standard regulation ("GRS regulation"), 71 Fed. Reg. 17,362 (Apr. 6, 2006). See Memorandum and Order (Docket Nos. 40, 41) (hereinafter, Legacy Fishing Co. v. Gutierrez, No. 06-0835 (JR), 2007 WL 861143 (D.D.C. Mar. 20, 2007)). In a detailed opinion, and after full briefing and a hearing on the issues, this Court found that NMFS promulgated the GRS regulation in accordance with the procedural provisions of the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson-Stevens Act" or "Act"), 16 U.S.C. §§ 1801-1883; that NMFS complied with the Act's National Standards 2, 7, 8, 9, and 10; and that NMFS complied with the requirements of the Regulatory Flexibility Act in issuing the challenged regulation. See generally id.

Despite failing to prevail in their challenge, Plaintiffs now request interim injunctive relief, asking this Court to "prohibit enforcement of Amendment 79 pending appeal," or, as they phrase it elsewhere, to issue a "stay preventing enforcement of three specific components" in the regulation. See Plaintiffs' Memorandum in Support of Fishing Company of Alaska's Motion to Stay Judgment Pending Appeal ("Pls' Br.") at 1, 3 (Docket No. 42). Plaintiffs' motion fails as a matter of law – the Magnuson-Stevens Act expressly precludes the issuance of interim injunctive relief in cases arising under the Act. See 16 U.S.C. § 1855(f)(1)(A). See also Plaintiffs' Memorandum in Support of Motion for Expedited Consideration and Resolution at 5 (Docket No. 9) (recognizing that "the [Magnuson-Stevens Act] does not provide for interim injunctive relief."). Because the relief requested is unavailable as a matter of law, Defendant respectfully requests that the Court deny Plaintiffs' motion.

Should the Court find that a consideration of the traditional factors governing the issuance of interim injunctive relief is warranted, despite the clear bar against such relief contained in the

---

[1] NMFS is a subagency of the Department of Commerce's National Oceanic and Atmospheric Administration ("NOAA").

1

Magnuson-Stevens Act, Defendant has responded to Plaintiffs' arguments below. In sum, to justify the issuance of interim injunctive relief, Plaintiffs have merely restated arguments previously made to, and rejected by, this Court, provided vague and conclusory allegations that Fishing Company of Alaska will incur some undisclosed level of economic harm, and cursorily alleged that it is in the public interest to bar NMFS from enforcing the GRS regulation. None of these arguments has merit, and Plaintiffs' burden in requesting interim injunctive relief requires more than, for instance, demonstrating the "non-frivolity of the appeal." Pls' Br. at 5 (quotations omitted). Accordingly, Plaintiffs have failed to meet their stringent burden in demonstrating that injunctive relief pending appeal is warranted.

## STANDARD OF REVIEW

### I.    INJUNCTIVE RELIEF PENDING APPEAL

An injunction pending appeal, like other types of interim injunctive relief, is "an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004) (citation omitted); Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 978 (D.C. Cir. 1985). Plaintiffs have the burden of proving the need for injunctive relief; Defendant's bear no burden to defeat the motion. Granny Goose Foods v. Brotherhood of Teamsters, 415 U.S. 423, 442-43 (1974). Moreover, "because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly." Fund for Animals v. Norton, 374 F. Supp. 2d 91, 98 (D.D.C. 2005), aff'd, 472 F.3d 872 (D.C. Cir. 2006); United States v. Texas, 523 F. Supp. 703. 729 (E.D. Tex. 1981) (since relief under Rule 62(c) "interrupts the ordinary process of judicial review and postpones relief for the prevailing party at trial, the stay of an equitable order is an extraordinary device which should be sparingly granted" (citations omitted)).

In this Circuit, four factors must be considered in determining whether to grant interim injunctive relief: (1) the likelihood of a plaintiff's success on the merits; (2) the possibility that the plaintiff will suffer irreparable injury if relief is denied; (3) the extent to which the balance of hardships favor the

respective parties; and (4) whether the public interest will be advanced by preliminary relief. See
Serono Labs. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998) (citing Washington Metro. Area
Transit Comm'n v. Holiday Tours ("WMATA"), 559 F.2d 841, 843 (D.C. Cir. 1977)); Nat'l Ass'n of
Farmworkers Orgs. v. Marshall, 628 F.2d 604, 613 (D.C. Cir. 1980). The factors "must be viewed as
a continuum, with more of one factor compensating for less of another." Bradshaw v. Veneman, 338 F.
Supp. 2d 139, 141 (D.D.C. 2004). Thus, "[i]f the arguments for one factor are particularly strong, an
injunction may issue even if the arguments in other areas are rather weak." Serono Labs., 158 F.3d at
1318 (citations omitted); see also Fund For Animals, 374 F. Supp. 2d at 105 ("while plaintiffs have
made a compelling showing of irreparable harm, the defendants' likelihood of success on the merits is
so significant that it outweighs the other factors").

## II.    THE APPLICABILITY OF THE ADMINISTRATIVE PROCEDURE ACT TO MOTIONS FOR INJUNCTIVE RELIEF PENDING APPEAL

The Magnuson-Stevens Act incorporates the standard and scope of review provisions of the
Administrative Procedure Act ("APA"), 5 U.S.C. § 706, which "accords great deference to agency
decision-making." Northern Wind v. Daley, 200 F.3d 13, 17 (1st Cir. 1999); Oregon Trollers v.
Gutierrez, 452 F.3d 1104, 1119 (9th Cir. 2006); Associated Fisheries of Maine v. Daley, 127 F.3d 104,
109 (1st Cir. 1997).    Thus, "[w]hether plaintiff is likely to prevail on the merits is, under the
circumstances of this case, informed by the deferential standards of review under the APA." Apotex
v. Food and Drug Admin., Civ. No. 06-0627 JDB, 2006 WL 1030151, *7 (D.D.C. Apr. 19, 2006); 16
U.S.C. § 1855(f)(1).

Pursuant to the APA, deference is due to the agency and an agency action may be overturned
only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .
in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." Marsh v. Oregon
Natural Resources Council, 490 U.S. 360, 376 (1989); Citizens to Preserve Overton Park v. Volpe, 401
U.S. 402 (1971); Louisiana Ass'n of Indep. Producers v. FERC, 958 F.2d 1101, 1117 (D.C. Cir. 1992);
Nat'l Trust for Historic Pres. v. Dole, 828 F.2d 776, 781 (D.C. Cir. 1987); Underwater Exotics, Ltd. v.

Secretary of the Interior, No. 93-1586, 1994 WL 80878 (D.D.C. Feb. 28, 1994); World Wildlife Fund

v. Hodel, No. 88-1276, 1988 WL 66193 (D.D.C. June 17, 1988).  Thus, the Court's only role is limited

to determining whether "the decision was based on a consideration of the relevant factors and whether

there has been a clear error of judgment."  Overton Park, 401 U.S. at 416; Southern Co. Services v. FCC,

313 F.3d 574, 580 (D.C. Cir. 2002).

**ARGUMENT**

Although styled as a motion to "stay" the Court's judgment, Plaintiffs' instant motion

unquestionably seeks injunctive relief during the pendency of an appeal – Plaintiffs ask the Court to

enjoin NMFS from enforcing three specific provisions of the GRS Regulation.  See Pls' Br. at 1.  This

relief is clearly injunctive in nature and cannot be fairly ascribed as a mere "stay" of the Court's Order.

See Cape Cod Commerical Hook Fishermen's Ass'n v. Daley, 30 F. Supp. 2d 111, 114 n. 11 (D. Mass.

1998) (in denying preliminary injunction, the court noted that plaintiffs' claim that they do not seek

injunctive relief "is disingenuous[,] as a court order 'setting aside' the issuance of the permits would,

of course, be injunctive in nature.").

Accordingly, Plaintiffs' motion should be viewed in light of the relief they actually request – an

injunction pending appeal.  See, e.g., Favia v. Indiana University of Pennsylvania, 7 F.3d 332, 337 (3rd

Cir. 1993) ("we must look beyond the motion's caption to its substance"); Neighbors for Rational Dev.

v. Norton, 379 F.3d 956, 960-65 (10th Cir. 2004) (plaintiffs' characterization of suit immaterial because

the impact of the relief sought dictated applicability of the provisions of the Quiet Title Act).  As

demonstrated below, Plaintiffs' request fails as a matter of law because Congress explicitly foreclosed

this type of relief in cases arising under the Magnuson-Stevens Act.

**I.      THE RELIEF PLAINTIFFS REQUEST IS NOT AVAILABLE UNDER APPLICABLE LAW.**

**A.      The Magnuson-Stevens Act Bars Plaintiffs From Obtaining Injunctive Relief
Pending Review.**

The Court need not reach the merits of Plaintiffs' request for injunctive relief pending review

because the explicit terms of the Magnuson-Stevens Act strictly prohibit the issuance of interim

4

injunctive relief.  The Magnuson-Stevens Act's judicial review provision, 16 U.S.C. § 1855(f)(1)(A),

sets forth the following:

> Regulations promulgated by the Secretary under this chapter . . . shall be subject to
> judicial review to the extent authorized by, and in accordance with [the APA] . . . except
> that (A) section 705 of [the APA] is not applicable, and (B) the appropriate court shall
> only set aside any such regulation or action on a ground specified in section 706(2)(A),
> (B), (C), or (D) of [the APA].

16 U.S.C. § 1855(f)(1)(A)-(B) (emphasis added).  Thus, challenges to rules and regulations promulgated

pursuant to the Magnuson-Stevens Act are subject to the judicial review provisions of the APA, with

one important exception – Congress expressly excluded the issuance of relief otherwise available under

5 U.S.C. § 705.  Id.[2]

Section 705 of the APA codifies the Court's traditional powers to issue interim injunctive or

equitable relief during judicial review proceedings.  See Superior Trucking Co. v. United States, 614

F.2d 481, 484 n.8 (5th Cir. 1980) (5 U.S.C. § 705 "confers general authority on both agencies and

reviewing courts to stay agency action pending review.").[3]  While traditionally a part of the Court's

equitable powers, Congress' exclusion of 5 U.S.C. § 705 from the Magnsuon-Stevens Act makes clear

that, in the specific context of judicial review of regulations promulgated under the Act, "the reviewing

court is without authority to enjoin the implementation of those regulations pending the judicial review."

See S. Conf. Rep. 94-711, at *54, 1976 U.S. Code Cong. & Admin. News, 660, 678 (1976).  See also

Scripps-Howard, 316 U.S. at 10-11, 16-17 (while the courts traditionally have the power to issue interim

---

[2] 5 U.S.C. § 705 states: "On such conditions as may be required and to the extent necessary to prevent
irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone
the effective date of an agency action or to preserve status or rights pending conclusion of the review
proceedings."

[3] Section 705 of the APA codified the existing law that, "as part of its traditional equipment for the
administration of justice, a federal court can stay the enforcement of a judgment pending the outcome
of appeal."  Scripps-Howard Radio v. FCC, 316 U.S. 4, 9-10 (1942); see also Sampson v. Murray, 415
U.S. 61, 69 n. 15 (1974) ("The relevant legislative history of [5 U.S.C. § 705] . . . indicates that it was
primarily intended to reflect existing law under the Scripps-Howard doctrine, . . . and not to fashion
new rules of intervention for District Courts. See S.Rep.No.752, 79th Cong., 1st Sess., 27, 44 (1945).").

injunctive or equitable relief, Congress has and may "deprive [a court] of its customary power to stay

orders under review.").

In Idaho Sporting Congress v. U.S. Forest Serv., 92 F.3d 922 (9th Cir. 1996), the Ninth Circuit

analyzed a similar statute (termed the Rescissions Act) which, like the Magnuson-Stevens Act,

specifically excluded 5 U.S.C. § 705 from its judicial review provisions.  Id. at 924 n.1, 925-26.  In

discussing the effect of the exclusion of Section 705 from the Rescissions Act, the Ninth Circuit

explained:

> Considering the Rescissions Act as a whole, the reference to 5 U.S.C. § 705 merely serves to
> clarify and make explicit the comprehensiveness of the prohibition on restraining orders,
> preliminary injunctions, and relief pending review.  By expressly excluding that provision in the
> Rescissions Act, Congress intended to forestall any attempt to obtain such relief under the APA
> based on the fact that that particular remedy is not available under the Rescissions Act.

Id. at 925-26 (emphasis in original).  Accordingly, like the statute reviewed in Idaho Sporting Congress,

Congress' exclusion of 5 U.S.C. § 705 from the Magnuson-Stevens Act precludes the issuance of

interim injunctive relief at all stages of judicial review.[4/]

Plaintiffs have recognized in this litigation that "the [Magnuson-Stevens Act] does not provide

for interim injunctive relief," Pls' Memo for Expedited Consideration at 5 (Docket No. 9).  Similarly,

Courts addressing this issue have consistently held that emergency or interim relief is not available

under the Magnuson-Stevens Act. See Turtle Island Restoration Network v. Dep't of Commerce, 438

F.3d 937, 944 (9th Cir. 2006) ("Provided that a complaint is filed within thirty days, the court reviews

---

[4/] Notably, Congress' exclusion of 5 U.S.C. § 705 also prevents a court of appeals, such as the D.C.
Circuit Court of Appeals, from issuing interim relief pursuant to Federal Rule of Appellate Procedure
8.  Specifically, 5 U.S.C. § 705 on its face applies to "the court to which a case may be taken on
appeal," such as the D.C. Circuit Court of Appeals.  See In re GTE Serv. Corp., 762 F.2d 1024 (D.C.
Cir. 1985) (citing 5 U.S.C. § 705 as authority for the Court of Appeals to issue a stay); Superior
Trucking Co. v. U.S., 614 F.2d at 483 (same); Ohio ex rel Celebrezze v. Nuclear Regulatory Comm'n,
812 F.2d 288, 290 (6th Cir. 1987) (same); Valona v. U.S. Parole Comm'n, 165 F.3d 508, 510 (7th Cir.
1998) (5 U.S.C. § 705 "permits a court, including a court of appeals, to afford interim relief"). Because
5 U.S.C. § 705 applies to the appellate court, Congress' exclusion of 5 U.S.C. § 705 from the
Magnuson-Stevens Act also precludes an appellate court from issuing interim injunctive relief and
evidences Congress' intent that injunctive relief is unavailable at all stages of judicial review.

the contested regulations in accordance with the APA *except* that § 1855(f)(1)(A) precludes preliminary injunction relief, a remedy ordinarily available under the APA."); Kramer v. Mosbacher, 878 F.2d 134, 137 (4th Cir. 1989) ("The exclusion of Section 705 powers prevents a reviewing court from issuing the sort of preliminary injunction granted by the district court."); Blue Water Fishermen's Ass'n v. NMFS, 158 F. Supp. 2d, 118, 121 (D. Mass. 2001) (holding that the Magnuson-Stevens Act's judicial review provision "forbids this Court from staying enforcement of an administrative rule pending review on the merits."); Cape Cod Commercial Hook Fishermen's Ass'n v. Daley, 30 F.Supp.2d 111, 113-114 (D. Mass. 1998) (holding that the Magnuson-Stevens Act expressly prohibits preliminary injunctive relief); Pacific Coast Fed'n of Fishermen's Ass'n v. Secretary of Commerce, 494 F. Supp. 626, 628 -629 (N.D. Cal. 1980) (same).

Without mentioning the dispositive provisions of the Magnuson-Stevens Act, Plaintiffs instead rely on Fed. R. Civ. P. 62(c) to support their request for interim injunctive relief. See Pls' Br. at 3-4.[5] However, Rule 62(c), like 5 U.S.C. § 705, speaks to the Court's traditional power to issue interim injunctive relief under certain circumstances.  The general, broad provisions of the Federal Rules of Civil Procedure do not and cannot overcome the clear Congressional intent expressed in the Magnuson-Stevens Act that interim injunctive relief is not available, as "a precisely drawn, detailed statute pre-empts more general remedies."  Block v. North Dakota, 461 U.S. 273, 285 (1983) ("'It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading.'" (quoting Brown v. GSA, 425 U.S. 820, 833 (1976)); Blue Water Fishermen's Ass'n v. NMFS, 158 F. Supp. 2d, 118, 122 (D. Mass. 2001) ("couching the action in different statutory language is not a hook which can remove the prohibitions of the Magnsuon-Stevens Act." (internal quotations omitted)).

---

[5] Fed. R. Civ. P. 62(c) states: "When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."

At bottom, the Magnsuon-Stevens Act "trades preliminary relief for expedited review." Blue Water Fishermen's Ass'n, 158 F. Supp. 2d at 124 (citing 16 U.S.C. § 1855(f)(4)).[6] Plaintiffs availed themselves of the Magnuson-Stevens Act's expedited review provisions in this case, see Docket Nos. 9, 11, and Plaintiffs can likewise request expedited review of their appeal to the D.C. Circuit. See D.C. Circuit Rule 27(f). However, the Magnuson-Stevens Act is clear that interim injunctive relief is not available in this case, rendering Plaintiffs' request for injunctive relief unavailable as a matter of law.

**B.     Even Were Interim Injunctive Relief Available Under the Magnuson-Stevens Act, the Judiciary May Not Enjoin Executive Branch Enforcement Measures.**

As discussed above, Plaintiff would have this Court enjoin NMFS from enforcing three specific provisions of the groundfish retention standard regulation, despite the fact that the regulation itself would remain in effect. See Pls' Br. at 1 (asking this Court to "prevent[] enforcement of three specific components of Amendment 79's monitoring and enforcement provisions); id. at 3 (seeking to "prohibit enforcement of Amendment 79 pending appeal"). Thus, NMFS would be prohibited from issuing any citation or bringing enforcement actions against any vessel in violation of these three specific measures and, presumably, in violation of the groundfish retention standards themselves.[7] NMFS would thus be required to regulate the fishery, but vessels would be free to disregard monitoring measures without recourse. Not only is such relief unworkable and antithetical to the Magnuson-Stevens Act, but it would represent an impermissible invasion upon the executive branch's prosecutorial discretion to determine

---

[6] 16 U.S.C. § 1855(f)(4) provides that, upon motion by the party who files a petition for review of agency regulations, "the appropriate court shall assign the matter for hearing at the earliest possible date and shall expedite the matter in every possible way."

[7] As stated in Federal Defendant's summary judgment briefing and in the Declaration of Susan Salveson (attached hereto as Exhibit 1), the GRS regulation's monitoring and enforcement measures were carefully crafted to ensure that NMFS has sufficient information to determine whether vessels are in compliance with the substantive groundfish retention standards. See Defendant's Reply in Support of Motion for Summary Judgment at 12-19 (Docket No. 36); Declaration of Susan Salveson ("Salveson Decl.") at ¶ 5-8. Contrary to Plaintiffs' suggestions, eliminating NMFS ability to obtain sufficient data to ensure compliance with the regulatory requirements necessarily jeopardizes the entire regulatory scheme. Salveson Decl. at ¶ 8.

when and how to enforce a regulation and statute under its authority.

Few principles are more well settled than that the judicial branch lacks authority to supervise enforcement activities of the executive branch.   Article II of the Constitution vests the Executive, not the Judiciary, with the exclusive authority to "take care that the Laws be faithfully executed." U.S. Const. art. II, § 3.  This delegation includes the power to determine whether and when to charge a violation of the laws of the United States. See, e.g., United States v. Batchelder, 442 U.S. 114, 124 (1979); see also Community for Creative Non-Violence v. Pierce, 786 F.2d 1199, 1201 (D.C. Cir. 1986) ("The power to decide when to investigate, and when to prosecute, lies at the core of the Executive's duty to see to the faithful execution of the laws; when reviewing the exercise of that power, the judicial authority is, therefore, at its most limited"). Thus, "[w]here a statute vests . . . discretion in an executive officer . . . to act under a given set of circumstances . . . and he is to act in the light of the facts he ascertains and the judgment he forms, a court cannot restrain him from acting on the ground that he has exceeded his jurisdiction by reason of an error either of fact or law which induced his conclusion." Adams v. Nagle, 303 U.S. 532, 542 (1938).

This conclusion is underscored by the firmly established doctrine of prosecutorial discretion. It is well settled that an agency's decision whether and when to take civil enforcement action is presumptively immune from judicial review. Heckler v. Chaney, 470 U.S. 821, 831 (1985). As explained by the Supreme Court:

> This Court has recognized . . . that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. . . . This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement.

470 U.S. at 831. Moreover, although it does not appear this principle has been applied to NMFS in this specific situation, it has been applied to other agencies in similar contexts. See Harmon Cove Condominium Ass'n v. Marsh, 815 F.2d 949, 952-53 (3d Cir. 1987) (denying request for mandamus seeking to compel Corps to take enforcement action because Corps enforcement decisions under the Clean Water Act Section 404 are discretionary and unreviewable). See also Dubois v. Thomas, 820 F.2d

943, 948 (8th Cir. 1987); New Jersey Dep't of Envt'l Protection v. Gloucester Envt'l Mgmt. Services,

668 F. Supp. 404, 407 (D.N.J. 1987) ("EPA's prosecutorial discretion in taking enforcement actions

[under the CWA] was presumptively immune from judicial review").

While Heckler (and some of the other cited cases) involve decisions not to take enforcement

action, the Court's reasoning applies equally to the present situation where a plaintiff seeks to restrain

future enforcement action. As discussed above, the Magnuson-Stevens Act provides NMFS with a range

of options and broad discretion in determining how best to enforce compliance with the statute. 16

U.S.C. §§ 1857(prohibited acts); 1858 (civil penalties); 1859 (criminal penalties); 1861 (enforcement).

If the Court were to dictate NMFS' decision, such as precluding its enforcement of measures contained

in the GRS regulation, the Court would necessarily eliminate the enforcement discretion afforded under

the Magnuson-Stevens Act. Such a result would be contrary to Congress' intent under the Magnuson-

Stevens Act and the respective roles of the judiciary and executive branch.[9]

## II.    SHOULD THE COURT REACH THE MERITS OF PLAINTIFFS' MOTION, THE MOTION SHOULD BE DENIED.

### A.    Plaintiffs Fail To Show A Likelihood of Success On The Merits.

After full consideration of the relevant claims and defenses, this Court upheld the GRS

---

[9] In any event, Plaintiffs' requested relief – asking the Court to enjoin enforcement of three provisions and thus alter the status quo pending appeal – is beyond the scope of relief available under Fed. R. Civ. P. 62(c).  See Coastal Corp. v. Texas Eastern Corp., 869 F.2d 817, 820 (5th Cir. 1989) ("Having reviewed the existing case law throughout the circuits and paying proper respect to Rule 62(c), we are persuaded that the powers of the district court over an injunction pending appeal should be limited to maintaining the status quo . . . .").  Contrary to Plaintiffs' claims, WMATA v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977), does not support the issuance of injunctive relief which alters the status quo. See Pls' Br. at 3. Rather, WMATA properly found that "the purpose of granting interim injunctive relief, whether by preliminary injunction or by stay pending appeal . . . is preventative, or protective; it seeks to maintain the status quo pending a final determination of the merits of the suit." WMATA, 559 F.2d at 844.  Thus, Plaintiffs' requested relief is also beyond the scope of relief available under Rule 62(c). See Hodges v. Shalala, 127 F. Supp. 2d 790, 791 (D.S.C. 2001) (Rule 62(c) "'has been narrowly interpreted to allow district courts to grant only such relief as may be necessary to preserve the status quo pending an appeal where the consent of the court of appeals has not been obtained.'" (quoting Vasile v. Dean Witter Reynolds, 205 F.3d 1327 (Table) (2d Cir. 2000) (citing 12 James Wm. Moore et al., Moore's Federal Practice § 62.06[1] (3d ed. 1999)).

regulation, finding: that NMFS promulgated the GRS regulation in accordance with the procedural provisions of the Magnuson-Stevens Act; that NMFS complied with the Act's National Standards 2, 7, 8, 9, and 10; and that NMFS complied with the requirements of the Regulatory Flexibility Act in issuing the challenged regulation. See generally Legacy Fishing Co., 2007 WL 861143. Plaintiffs have offered no reason to question this Court's decision. Rather, Plaintiffs simply restate the same arguments made to this Court during summary judgment briefing, arguments which this Court squarely addressed and reasonably rejected. See Pls' Br. at 5-8. Plaintiffs' burden in justifying the extraordinary relief of an injunction pending appeal is not satisfied by repeating arguments already rejected by this Court.

"The first, and most important, hurdle which the [Plaintiffs] must overcome is the requirement that they present a strong likelihood of prevailing on the merits of their appeal." Am. Cetacean Soc. v. Baldrige, 604 F. Supp. 1411, 1414 (D.D.C. 1985). "[T]he 'likelihood of success on the merits' inquiry is the most salient consideration, because a plaintiff's failure to prevail on that prong necessitates an unusally strong showing as to the remaining three factors in order 'to turn the tide in [its] favor.'" Apotex, Inc. v. Food and Drug Admin., Civ. No. 06-0627 JDB, 2006 WL 1030151, at *8 (D.D.C. Apr. 19, 2006) (quoting Davenport v. Int'l Brotherhood of Teamsters, 166 F.3d 356, 366 (D.C. Cir. 1999)). Accordingly, "[w]ithout such a substantial indication of probable success, there would be no justification for the Court's intrusion into the ordinary processes of administration and judicial review." Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1985). Moreover, it is incumbent on Plaintiffs to make a new showing beyond that already made to and rejected by this Court. See Shays v. FEC, 340 F. Supp. 2d 39, 46 (D.D.C. 2004) (finding request for interim relief deficient where defendant "'has offered no new arguments in its motion, but rather rehashes arguments that have been rejected.'") (quoting U.S. v. Judicial Watch, Inc., 241 F. Supp. 2d 15, 16 (D.D.C. 2003), stay denied, No. 03-5019, 2003 WL 1089413, at *1 (D.C. Cir. Mar. 6, 2003)).

As stated above, Plaintiffs have offered no new argument in their motion for injunctive relief. For instance, Plaintiffs continue to claim that additional procedures must be followed in promulgating

regulations, such as the Council's full control over the development, preparation, and submission of proposed regulations to NMFS.  See Pls' Br. at 6-7.  As this Court correctly noted, the Magnuson-Stevens Act speaks to the issue of what process must occur prior to the publication of a proposed regulation in the Federal Register – i.e., the Council must "submit," not "prepare and submit," proposed regulations to NMFS.  See Legacy Fishing Co., 2007 WL 861143, at *5-6.  Because this procedure was followed in this case, and because the statute speaks clearly "to the precise question at issue," the Court must and did "give effect to the unambiguously expressed intent of Congress."  Chevron USA, Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984); see also Apotex v. Food and Drug Admin., 2006 WL 1030151 at *8 ("When the agency decision is based upon its interpretation of the statute that it is charged with administering, a court's deference to the agency is at its apex." (citing United States v. Mead, 533 U.S. 218, 226-27 (2001)).

     Nor do any of Plaintiffs' remaining arguments break new ground.  See Pls' Br. at 6 (claiming the Council never "considered" the challenged monitoring and enforcement requirements, despite the fact that the Court and the record demonstrate otherwise, see Legacy Fishing Co., 2007 WL 861143 at *4); id. (cursorily stating that they "disagree[]" with the Court's analysis of Oceana v. Evans, No. 04-0811, 2005 WL 555416 (D.D.C. Mar. 9, 2005)); id. at 8 (devoting one paragraph to arguing that the Court's extensive analysis of Plaintiffs' National Standards 7, 8, and 9 claims was in error).[9]  At this stage in the proceedings, Plaintiffs must show more.  See Lands Council v. Packard, 391 F. Supp. 2d

---

[9] The only arguably new analysis in Plaintiffs' brief consists of a suggestion that NMFS (and possibly the Council's Executive Director) engaged in improper conduct by supplanting a firm decision by the Council that no additional monitoring and enforcement requirements were necessary. See Pls' Br. at 7 (noting that the Council's Executive Director could act improperly because his "salary and budget are controlled by NMFS").  Despite the fact that the record belies Plaintiffs' claims, see Legacy Fishing Co., 2007 WL 861143 at *4, subsequent Council process eliminates all doubt that no improper conduct occurred and that the Council intended for and agrees with the inclusion of the monitoring and enforcement provisions in the GRS Regulation. See Salveson Decl. at ¶ 9-12 (explaining that the Council has subsequently included the exact same monitoring provisions in other regulatory schemes in the North Pacific and that the Council reassessed and altered some of the GRS Regulation's provisions but left intact the three provisions Plaintiffs contend supplanted a Council decision).

869, 871 (D. Idaho 2005) (finding plaintiffs' arguments for interim relief pending appeal insufficient where they "failed to assert any new arguments" and merely "restated the arguments previously raised"); Protect Our Water v. Flowers, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004) (same).

Seemingly aware that a greater showing is required, Plaintiffs attempt to diminish the settled standards in this Circuit governing requests for injunctive relief pending appeal. For instance, Plaintiffs suggest that a minimal showing of probable success on the merits suffices to justify injunctive relief pending appeal, such as their demonstrating the "non-frivolity of the appeal." Pls' Br. at 5 (quotations omitted). While "the necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors," this Circuit has been clear that a plaintiff must demonstrate "a substantial case on the merits" even when "the other three factors favor interim relief." See WMATA, 559 F.2d at 843, 844. Thus, even when the other three factors are met, this Circuit requires Plaintiffs to raise "'questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" Id. (quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953)). As demonstrated above, Plaintiffs cannot make this showing here. See Protect Our Water v. Flowers, 377 F. Supp. 2d at 884 ("Review of whether an agency decision violated environmental statutes does not present novel legal issues." (citing cases)).

**B.    Plaintiffs Fail To Demonstrate That Irreparable Harm Is Sufficiently Likely And That An Injunction Will Not Harm Others.**

Again misapprehending the nature of the extraordinary relief they request, Plaintiffs do not provide any evidence of irreparable harm to support their requested relief. Rather, Plaintiffs rest on vague, unsubstantiated allegations that the Fishing Company of Alaska will incur some undefined level of economic harm during the pendency of the appeal. See Pls' Br. at 8-12. Moreover, Plaintiffs raise irrelevant arguments allegedly demonstrating that others will not be injured, ignoring the purpose and requirements of the regulation they challenge. See id. at 12-13. Again, this Circuit demands more.

"The irreparable injury requirement erects a very high bar for a movant." Apotex v. Food and Drug Admin., 2006 WL 1030151 at *16. To warrant injunctive relief pending appeal, the harm alleged

must be certain, great, actual, and imminent.  Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985).  Courts in this Circuit look to three factors in assessing whether a plaintiff will be irreparably harmed: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided.  Cuomo, 772 F.2d at 977.   As this Circuit has explained:

> "The key word in this consideration is irreparable.  Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm."

Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985) (quoting Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d at 925) (emphasis in original)).   Moreover, courts "require that the record contain evidence from which [a court] can make specific findings" of irreparable harm.  Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n, 812 F.2d 288, 290 (6th Cir. 1987).

Here, Plaintiffs provide no "evidence" of irreparable harm.  See Pls' Br. at 9.  Instead, Plaintiffs offer vague, conclusory, and unsubstantiated allegations that FCA will incur some undefined degree of economic impact in order to comply with the GRS regulation.  Id.  Furthermore, Plaintiffs fail entirely to address other relevant factors, such as whether the undisclosed economic impacts can be mitigated or recouped in the future.  See Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) ("[T]he injury must be beyond remediation.").  Contrary to Plaintiffs' claims, "irreparable" harm is not presumed simply because Plaintiffs allege, without supporting evidence, an economic injury.  Apotex v. Food and Drug Admin., 2006 WL 1030151 at *16 ("harm that is 'merely economic' in character is not sufficiently grave under this standard." ); WMATA, 559 F.2d at 843 n. 2, 3 (D.C. Cir. 1977); Wisconsin Gas Co. v. FERC, 758 F.2d at 674; Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d at 925; Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n, 812 F.2d at 290; A.O. Smith Corp. v. FTC, 530 F.2d 515, 527 (3rd Cir. 1976).

In addition to failing to substantiate allegations of "irreparable harm," Plaintiffs fail to explain how or why an injury is "irreparable" in light of the regulatory programs in the North Pacific which require the same monitoring and enforcement provisions Plaintiffs seek to enjoin here.  See Salveson

Decl. at ¶ 9-12.  For instance, the Council and NMFS recently implemented the Central Gulf of Alaska Rockfish Pilot Program, which contains the same monitoring and enforcement provisions Plaintiffs complain about here.  Id. at ¶ 10.  The Fishing Company of Alaska has indicated that it may participate in the program, and it appears that at least one vessel has undergone modifications to comply with the same requirements it seeks to enjoin here.  Id.  Plaintiffs own actions indicating possible participation in these other programs with the same regulatory requirements undermine their claims that the GRS regulation challenged here constitutes the sole source of their claimed harm. See, e.g., Ysasi v. Rivkind, 856 F.2d 1520 (Fed. Cir. 1988) (finding it pointless to petition for a stay under 5 U.S.C. § 705 where Plaintiffs' property had already been transferred since the action could no longer be "stayed.").

Similarly, Plaintiffs' claims that they are "irreparably harmed" because their appeal will become moot are baseless.  While claiming the case will become moot on appeal, Plaintiffs point to no facts which indicate or even suggest that the case will become moot or compromised on appeal.  Pls' Br. at 8-10.  Rather, Plaintiffs' cite the need to comply with a valid regulation during the appeal as a basis for finding irreparable harm.  Id.  As the D.C. Circuit has explained, irreparable harm is not necessarily demonstrated by merely identifying "an irreversible change from the status quo." See Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 976 (D.C. Cir. 1985)  (distinguishing between allegation that a claim will actually become moot on appeal with allegations that identify a change in the status quo during appeal).

Notably, the Council and NMFS took into account the economic impacts attributable to the groundfish retention and monitoring requirements in developing and implementing the GRS regulation. NMFS and the Council formulated a regulatory scheme which gradually increased the percentage of fish that must be retained over a period of several years and repeatedly delayed the effective date of the regulation in order to afford the regulated vessels with time to make necessary modifications and adapt fishing and business operations.  71 Fed. Reg. at 17,364 (providing extensive amount of time to allow vessels to make the necessary changes so as to minimize any costs of compliance with the regulation);

AR 111-04 at 12, 107-08, 148-49, 156-57; AR 66.c; AR 169 (same).  Despite these efforts, Plaintiffs now ask this Court to do exactly what the Council and NMFS did well over a year ago – provide additional time to mitigate and minimize any costs of complying the GRS regulation.  Plaintiffs' strategic decision not to utilize the extended time and opportunity to mitigate costs should not now support the issuance of injunctive relief.  See, e.g., Cuomo, 772 F.2d at 977 (noting that "self-imposed costs" and "self-imposed risk" are not properly "the subject of inquiry on a motion for stay," such as when an entity takes the risk that a license might not be granted or might be delayed).

In addition to failing to demonstrate irreparable harm, Plaintiffs must establish the absence of substantial harm to other interested persons.  See WMATA v. Holiday Tours, 559 F.2d at 843.  To make this showing, Plaintiffs state that no harm will befall any other party because the average retention rates of the fleet already satisfy the first year's retention standard of 65%.  See Pls' Br. at 13.  Plaintiffs' arguments fail.  The GRS regulation's retention standards apply individually to each vessel, not to the "average" retention rates of the fleet as a whole.  See 71 Fed. Reg. at  17,363.  Several vessels consistently fall short of meeting even the first year's retention standard.  See, e.g., AR 111-04 at 12, 127.  More importantly, mandatory, enforceable retention standards require each vessel to maintain appropriate levels of retention and to permanently alter their fishing practices.  See AR 117 at 11, 47 (Council's intent to force change and "take action to meet policy objectives").  Thus, Plaintiffs' focus on "fleet wide averages" mistakes the regulatory scheme and fails to address the harm to the public, other fishermen, the State of Alaska, and others from the continuation of fishing practices that result in avoidable waste of fishery resources.  See Defs' Memorandum in Support of Motion for Summary Judgment at 23 (Docket No. 26) (documenting the public comments of the State of Alaska, the Environmental Protection Agency, other regulated fishermen, and other interested parties supporting the regulatory requirements and expressing a need for their implementation).

In sum, Plaintiffs have failed to carry their burden in demonstrating "irreparable" harm and the absence of harm to others.  Accordingly, Plaintiffs' motion should be denied.  Chaplaincy of Full Gospel

16

Churches v. England, 454 F.3d at 297 ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.").

C.    **The Public Interest Weighs Heavily Against The Issuance Of Injunctive Relief In This Case.**

Despite the fact that the "public interest is a uniquely important consideration in evaluating a request for" interim injunctive relief, National Ass'n of Farmworkers Orgs. v. Marshall, 628 F.2d 604, 616 (D.C. Cir. 1980), Plaintiffs devote little effort to demonstrating that this factor justifies the relief they request, and for obvious reason – the public interest clearly favors denial of an injunction preventing NMFS' enforcement of specific provisions of the GRS regulation.[10]

The public interest standard is a separate consideration in determining whether to grant equitable relief. Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 545 (1987). When injunctive relief would harm the public interest, a court may withhold the relief, even if doing so would burden or cause irreparable injury to the movant. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312-313 (1982); Yakus v. United States, 321 U.S. 414, 440 (1944). "In litigation involving the administration of regulatory statutes designed to promote the public interest," the public interest factor necessarily becomes crucial. The interest "of private litigants must give way to the realization of public purposes." Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C. Cir. 1958). Moreover, under the public interest prong, the views of "Congress, the elected representatives of the entire nation," are "presumed

---

[10] The only argument Plaintiffs do raise is that the public interest favors reasonable administration of the law. See Pls' Br. at 13. This argument, however, flatly ignores the public interest factor and, instead, merely restates Plaintiffs' arguments relating to the likelihood of success. Moreover, as demonstrated by this Court's reasoned summary judgment opinion, NMFS' GRS regulation does constitute a "reasoned" application of law. See, e.g., Apotex v. Food and Drug Admin., 2006 WL 1030151 at * 18 n. 12 ("Apotex claims that the public interest is furthered by 'faithful application of the laws.' This is undoubtedly true, but it is of little aid here. In the Court's opinion, the holding-on-the-merits approach adopted by the FDA is more faithful to the statutory language, preferable from a policy standpoint, and facilitates consistency and industry certainty – all things that amount to a 'faithful application of the law.'").

to represent the interest of their constitutes" and thus constitute "another sense by which the public interest should be gauged." Cuomo, 772 F.2d at 978; United States v. Oakland Cannabis Buyers' Coop, 532 U.S. 483, 497 (2001) ("[A] court sitting in equity cannot 'ignore the judgment of Congress, deliberately expressed in legislation.'" (quoting Virginian R. Co. v. Railway Employees, 300 U.S. 515, 551 (1937)).

There can be little doubt that reducing bycatch and waste of fishery resources through enforceable mechanisms, such as the GRS regulation, lies squarely within the public interest.  In 1976, Congress enacted the Magnuson-Stevens Act, 16 U.S.C. §§ 1801-1883, to "conserve and manage the fishery resources found off the coasts of the United States" and "to promote domestic commercial and recreational fishing under sound conservation and management principles."  16 U.S.C. § 1801(b)(1), (3).  In 1996, Congress passed the Sustainable Fisheries Act ("SFA"), where "Congress severely criticized the present level of bycatch [and waste of fishery resources] as unacceptably high." Conservation Law Found. v. Evans, 209 F. Supp. 2d 1, 12 (D.D.C. 2001).  The principal sponsor of the SFA noted that the statute was intended to "bring a stop to this inexcusable amount of waste."  142 Cong. Rec. 10810 (Sept. 18, 1996) (Sen. Stevens); see also 141 Cong. Rec. 25420 (Sept. 18, 1995) (Rep. Young) ("The reduction of bycatch in our fisheries is one of the most crucial challenges facing fisheries managers today.").

Through these enactments, Congress amended the Magnuson-Stevens Act in several places to place mandatory obligations on fishery managers to address the waste of fishery resources.  See 16 U.S.C. § 1802(2) (defining "bycatch"), § 1853(a)(11) (requiring fishery managers to assess the amount and type of bycatch occurring in each fishery), § 1853(a)(11) (mandating that every fishery management plan contain conservation and management measures that minimize bycatch to the extent practicable), § 1851(a)(9) (every regulation and fishery management plan also minimize bycatch to the extent practicable).   Indeed, Congress included several provisions addressing bycatch in the North Pacific fisheries at issue in this case. See 16 U.S.C. § 1862(f) (tasking the North Pacific Council with lowering

18

"the total amount of economic discards occurring in the fisheries under its jurisdiction"); 16 U.S.C. § 1862(g) (bycatch reduction incentives in the North Pacific); 16 U.S.C. § 1862(i) (full retention and utilization provisions applicable to the North Pacific). Thus, Congress has declared it a national policy that fishery managers develop "practical measures that minimize bycatch and avoid unnecessary waste of fish," 16 U.S.C. § 1801(c)(3), such as the GRS regulation Plaintiffs seek to enjoin here.

In addition to Congress, the State of Alaska and the North Pacific Fishery Management Council – itself composed of federal, state, industry, and private representatives – have clearly noted that implementation of the GRS regulation lies within the public interest. During the administrative process, the State of Alaska fully supported the GRS regulation and noted, among other things, that it is "an affront to those Alaskan's unable to participate in many of these fisheries to hear reports of thousands of tons of their coastal resources being wasted." AR 165 at 8; AR 49.a at 4-5. Likewise, the North Pacific Fishery Management Council has repeatedly explained that the GRS regulation's measures, including NMFS ability to enforce the retention requirements, are in the public interest:

> Recognizing the importance of both the mandate of the Magnuson-Stevens Fishery Conservation and Management Act to reduce bycatch (discards) to the extent practicable, the perception expressed by some members of the public that discards in the BSAI are excessive, the economic importance of these groundfish fisheries, and the dependence of the participants on these groundfish fisheries, the Council is committed to reducing bycatch, minimizing waste, and improving utilization of fish resources to the extent practicable in order to provide the maximum benefit to the present generations of fishermen, associated fishing industry sectors, communities, and the nation as a whole. Finally, the Council acknowledges the fact that any solution to the problem of reducing discards must take into account the ability of NOAA fisheries to monitor discards and adequately enforce any regulations that are promulgated.

AR 111-04 at 16. Indeed, the Council explicitly stated that further delay in implementing the challenged groundfish retention standards is not within the public interest. See AR 117 at 15-17, 27, 48 (Council rejecting delay of the GRS regulation pending additional fishery management plan amendments, such as Amendment 80); AR 118 at 3-5.

Contrary to the policy and intent of Congress, the Council, NMFS, Alaska, and others, Plaintiffs here seek to effectively enjoin a regulation which provides mandatory, enforcement requirements on vessels operating in the BSAI groundfish fishery to address the "unacceptable waste of the public's

natural resources" in the BSAI groundfish fishery.  71 Fed. Reg. at 17,369.  Were the Court to grant Plaintiffs' motion, the public would be forced to wait until this litigation is completely resolved (at some unidentified point in the future) before it is able to benefit from reduced bycatch and waste of fishery resources, changed fishing behavior in this fleet, and the other tangible benefits emanating from the, as promulgated, enforceable GRS Regulation.  See Legacy Fishing Co., 2007 WL 861143 at *7 (identifying the several benefits expressed by NMFS that will emanate from the GRS Regulation).  As Susan Salveson, Assistant Regional Administrator for NMFS's Sustainable Fisheries Division, has explained:

> [T]he elimination of the three challenged [monitoring and enforcement] requirements from the GRS regulation would severely impact NMFS ability to monitor and enforce the substantive requirements developed by the Council and NMFS in the challenged GRS regulation.  The elimination of the M&E requirements will jeopardize the tangible benefits sought to be achieved through implementation of the GRS program and will jeopardize NMFS's ability to effectively and responsibly fulfil its obligations under the Magnuson-Stevens Act to minimize bycatch in the BSAI groundfish fishery to the extent practicable.

Salveson Decl. at ¶ 13.

Accordingly, the public interest factor weighs heavily against the issuance of Plaintiffs' requested injunctive relief, and Plaintiffs' motion should therefore be denied. See Hamlin Testing Labs v. U.S. Atomic Energy Comm'n, 337 F.2d 221, 222-23 (6th Cir. 1964) (where agency vigorously opposes request for stay, the court considered it proper "to give at least interim respect to the expert judgment of the [agency] as a coordinate agency of government specifically created to further the public purposes in this area.").

## CONCLUSION

For the foregoing reasons, Federal Defendant respectfully requests that this Court deny Plaintiffs' motion for injunctive relief pending appeal.

Dated: May 16, 2007                    Respectfully Submitted,

                                       MATTHEW J. McKEOWN, Acting Asst. Attorney General
                                       JEAN E. WILLIAMS, Section Chief
                                       LISA L. RUSSELL, Asst. Section Chief

                        */s/ Michael R. Eitel*
                        MICHAEL R. EITEL,
                        Trial Attorney (SBN 22889 (Neb.))
                        U.S. Department of Justice
                        Environment & Natural Resources Division
                        Wildlife & Marine Resources Section
                        Ben Franklin Station, P.O. Box 7369
                        Washington, DC 20044-7369
                        Phone: (202) 305-0339/ Fax: (202) 305-0275
                        Email: Michael.Eitel@usdoj.gov

                        Attorneys for Federal Defendant