UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEGACY FISHING COMPANY, et al., )<br>)<br>Plaintiffs, )<br>)<br>)<br>v. )<br>)<br>CARLOS GUTIERREZ, Secretary of )<br>Commerce, )<br>)<br>Defendant. )<br>)<br>_____ ) | Civil Action No. 06-0835 (JR) |

### DECLARATION OF SUSAN J. SALVESON

I, SUSAN J. SALVESON, declare:

1. I am the Assistant Regional Administrator for the Sustainable Fisheries Division, Alaska Region, of the National Marine Fisheries Service ("NMFS"), National Oceanic and Atmospheric Administration ("NOAA"), of the United States Department of Commerce.

2. As part of my official duties, I am responsible for coordinating the development and implementation of policies governing the management of North Pacific fisheries under federal jurisdiction. In my capacity as Assistant Regional Administrator, I assist the Regional Administrator for the Alaska Region and the Secretary of Commerce ("Secretary") in carrying out their responsibilities for complying with the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson-Stevens Act"), as that statute applies to the development and implementation of fishery management plans ("FMPs") for achieving conservation and

DECLARATION OF
SUSAN J. SALVESON

1

UNITED STATES DEPARTMENT OF JUSTICE
Wildlife and Marine Resources Section
Environment and Natural Resources Division
P.O. Box 7369
Washington, D.C. 20044-7369 / (202) 305-0339

management of the groundfish fisheries of the Bering Sea and Aleutian Islands management area ("BSAI"). As a result, I am familiar with and participate in the development and implementation of BSAI FMP amendments and regulations necessary to implement such amendments. I attend meetings of the North Pacific Fishery Management Council ("Council") and periodically serve on the Council as NMFS's designee for the Regional Administrator.

3. In performance of my official duties, I participated in the development and implementation of Amendment 79 to the BSAI FMP and the regulations implementing the Groundfish Retention Standard ("GRS") program. I served on the Council as NMFS's designee for the Regional Administrator during the development of Amendment 79. I supervised the development of the draft GRS regulations. I also participated in NMFS's review of Amendment 79 and the GRS regulations submitted by the Council, and NMFS's decision to approve Amendment 79 and the GRS regulations.

4. Amendment 79 was initiated and developed by the Council to reduce bycatch and waste of groundfish species in the BSAI groundfish fishery. After years of planning, analysis, debate, and public input, the Council approved Amendment 79 and the GRS program, which mandates the retention of a specified percentage of BSAI groundfish catch on an individual vessel basis over the course of a calendar year. After the Council's decision, and in accordance with our usual process, the Council and NMFS worked together to draft regulations implementing Amendment 79 and the GRS program. In accordance with the Magnuson-Stevens Act, the Secretary approved Amendment 79 on August 31, 2005, and issued a final rule implementing the GRS program on April 6, 2006 (71 FR 17362).

DECLARATION OF
SUSAN J. SALVESON

UNITED STATES DEPARTMENT OF JUSTICE
Wildlife and Marine Resources Section
Environment and Natural Resources Division
P.O. Box 7369
Washington, D.C. 20044-7369 / (202) 305-0339

2

5. NMFS's calculation of an individual vessel's groundfish retention rate relies heavily on observer species composition samples. Groundfish catch is based on an estimate of species composition for each haul. The observer samples a fraction of each haul and determines the weight of each species in that sample. The total weight of each haul is determined by the flow scale. Based on the known total weight of the haul, and the weight of each species in the sample, the observer is able to estimate the weight of each species in the haul. The estimated groundfish catch is the sum of the estimated weights of all groundfish not on prohibited species status. In order to minimize bias and error in an observer's species composition samples and to ensure proper groundfish catch accounting on non-American Fisheries Act ("AFA") trawl catcher/processors under the GRS program, NMFS developed a suite of provisions commonly referred to as monitoring and enforcement ("M&E") requirements.

6. The final rule implementing the GRS program, as published on April 6, 2006, contains the following M&E requirements: (1) the owner or operator of the vessel is required to provide at least two level 2 NMFS-certified observers; (2) the time required for each observer to complete sampling, data recording, and data communications duties must not exceed 12 consecutive hours in each 24-hour period; (3) each haul must be weighed on a NMFS-approved scale; (4) each haul must be made available for sampling by an observer at a single location; (5) each haul must be weighed separately and cannot be mixed with other hauls; (6) sorting of catch prior to weighing is prohibited; (7) all catch must be documented according to specified recordkeeping and recording requirements; (8) each vessel must provide a NMFS-approved observer sampling station; and (9) when standing where the observer collects unsorted catch, the

DECLARATION OF
SUSAN J. SALVESON

3

UNITED STATES DEPARTMENT OF JUSTICE
Wildlife and Marine Resources Section
Environment and Natural Resources Division
P.O. Box 7369
Washington, D.C. 20044-7369 / (202) 305-0339

observer must be able to see that no catch has been removed from the fish bin to that point.

7.     As explained more fully in the final rule for the GRS program, the three M&E requirements challenged by Fishing Company of Alaska ("FCA") (numbers 4, 5, and 9 above) are particularly important components of the GRS program because they ensure that all catch is available for sampling by an observer and that sampled catch is representative of the species composition of the total catch. This is an important issue because monitoring a vessel's compliance with the annual GRS requires that non-groundfish catch and catch of groundfish species on prohibited status be deducted from the total catch weight when calculating vessel specific GRS ratios. As such, the three M&E requirements challenged by FCA greatly improve the accuracy of collected data, provide an adequate level of data for monitoring an individual vessel's compliance with the annual GRS, and significantly reduce unintentional and intentional sources of bias to the collected data.

a.     For instance, the ban on mixing hauls ensures that sampled catch is representative of the species composition of the total catch, and that the weight of each haul is known. In the BSAI groundfish fisheries prosecuted by non-AFA trawl catcher/processors, the distribution of organisms by size and species is often heterogeneous between hauls. Therefore, the species catch composition and relative weight of multiple hauls from different areas or depths can differ substantially. If a vessel mixes hauls, a composite sample taken at specific times as the catch moves through the vessel's processing facility may not be representative of the actual species catch composition. The lack of representative samples would increase the potential for erroneously assigning a specific species composition to a specific amount of fish.

DECLARATION OF
SUSAN J. SALVESON

4

UNITED STATES DEPARTMENT OF JUSTICE
Wildlife and Marine Resources Section
Environment and Natural Resources Division
P.O. Box 7369
Washington, D.C. 20044-7369 / (202) 305-0339

Any errors would be exacerbated as the composite sample is expanded to represent the total weight of the mixed hauls. NMFS must have confidence that the observer data collected is representative of groundfish catch in each haul and that potential sources of bias have been minimized. Because NMFS anticipates that the mixing of hauls would result in unrepresentative species composition samples for purposes of monitoring the GRS program, NMFS prohibited the mixing of hauls.

        b.     The prohibition on operating more than one flow scale and the requirement for a single point of observation ensure that all catch is available for sampling by an observer. If more than one operational line or multiple observer sampling points were permitted, catch could be unintentionally or intentionally diverted away from the sample collection point used by the observer. NMFS determined that this scenario could lead to improperly sampled catch and the introduction of an unacceptable level of bias and error to the observer's samples. Requiring all catch to be available for sampling from a single point greatly improves the accuracy of collected data and reduces the introduction of unintentional or intentional bias. Therefore, NMFS prohibited the use of multiple lines for conveying fish between the bins and the area where unsorted catch is sampled by the observer.

    8.     Removal of any of the GRS regulation's M&E requirements would severely hamper NMFS' ability to collect data and receive information necessary to determine an individual vessel's compliance with the annual GRS. Without the full suite of M&E provisions described above, NMFS would receive data that is vulnerable to numerous sources of unintentional and intentional error and bias, and NMFS's ability to adequately calculate a

DECLARATION OF
SUSAN J. SALVESON

5

UNITED STATES DEPARTMENT OF JUSTICE
Wildlife and Marine Resources Section
Environment and Natural Resources Division
P.O. Box 7369
Washington, D.C. 20044-7369 / (202) 305-0339

vessel's GRS and to effectively enforce the GRS program would be severely compromised.

9. As described below, the necessity of the three challenged M&E requirements included in the GRS regulations is illustrated by the Council's and NMFS's decision to include the same provisions in two subsequent fishery management programs.

10. Central Gulf of Alaska Rockfish Pilot Program ("Rockfish Program").

a. The Rockfish Program allocates exclusive harvesting and processing privileges for a specific set of rockfish species to eligible persons and allows eligible persons to realize this exclusive harvesting privilege when they form cooperatives with other eligible persons. The final rule implementing the Rockfish Program contains the same three M&E requirements challenged by FCA – the Rockfish Program prohibits participating trawl catcher/processors from mixing hauls (50 CFR 679.84(c)(1)) or operating more than one flow scale (50 CFR 679.84(c)(4)), and requires a single point of observation (50 CFR 679.84(c)(2)). All vessels participating in the Rockfish Program must comply with all of the M&E requirements established for the program. The Rockfish Program, including all of the M&E provisions for the program, was developed and promulgated in accordance with the provisions of Magnuson-Stevens Act applicable to the development of FMP amendments and implementing regulations.

b. On May 15, 2006, shortly after NMFS issued the final rule for the GRS program, NMFS published a Notice of Availability for the Rockfish Program, which was Amendment 68 to the Fishery Management Plan for Groundfish of the Gulf of Alaska (71 FR 27984). On June 7, 2006, NMFS published the proposed rule for the Rockfish Program. (71 FR

DECLARATION OF
SUSAN J. SALVESON

UNITED STATES DEPARTMENT OF JUSTICE
Wildlife and Marine Resources Section
Environment and Natural Resources Division
P.O. Box 7369
Washington, D.C. 20044-7369 / (202) 305-0339

6

33040). The proposed rule for the Rockfish Program as submitted by the Council and published by NMFS included the same three M&E requirements challenged by FCA. For reasons similar to those set forth in paragraphs 5 and 7 of this Declaration, the Council and NMFS included the three challenged M&E provisions, as well as additional M&E provisions, in the regulations implementing the Rockfish Program.

        c.      Following a public comment period, during which NMFS held a public meeting on the proposed rule that was attended by representatives for FCA (71 FR 35829, June 22, 2006), NMFS approved the Rockfish Program on August 11, 2006, published the final rule to implement the Rockfish Program on November 20, 2006, and the rule became effective on December 20, 2006. Fishing under the Rockfish Program began in May 2007. The Magnuson-Stevens Act 30-day period during which the public could initiate judicial review of the final regulations for the Rockfish Program expired on December 20, 2006. No legal challenge to the final rule implementing the Rockfish Program was filed.

        d.      Based on NMFS's records, FCA currently holds three catcher/processor licenses that allow FCA to receive an exclusive harvest privilege if those licenses are assigned to a cooperative under the Rockfish Program. For the 2007 fishing season, FCA filed an application with NMFS to form a rockfish cooperative with two of their eligible licenses. The cooperative application submitted by FCA lists the F/V Alaska Spirit and the F/V Alaska Victory as the vessels that may be used to fish for FCA's cooperative allocation. On May 15, 2007, NMFS conducted a scale inspection onboard the F/V Alaska Spirit, determined that the flow scale was installed in a manner consistent with applicable regulations, and approved the flow

DECLARATION OF
SUSAN J. SALVESON

7

UNITED STATES DEPARTMENT OF JUSTICE
Wildlife and Marine Resources Section
Environment and Natural Resources Division
P.O. Box 7369
Washington, D.C. 20044-7369 / (202) 305-0339

scale until May 15, 2008. The F/V Alaska Spirit has only one operational line between the exit of the bins and the flow scale. According to the analysis prepared for Amendment 79 and the GRS program, both the F/V Alaska Spirit and the F/V Alaska Victory have participated in the BSAI groundfish fishery.

11. Amendment 80.

    a. If approved and implemented, Amendment 80 to the BSAI FMP would allocate several BSAI non-pollock groundfish species among trawl fishing sectors and facilitate the formation of harvesting cooperatives in the non-AFA trawl catcher/processor sector. FCA's vessels have participated in the BSAI groundfish fisheries that would be regulated by Amendment 80.

    b. On April 30, 2007, NMFS published a Notice of Availability for Amendment 80. (72 FR 21198). The proposed rule for Amendment 80, as submitted by the Council, includes the three M&E requirements challenged by FCA. NMFS intends to file the proposed rule for Amendment 80 with the Office of the Federal Register by May 18, 2007. If finalized, the rule implementing Amendment 80 would prohibit participating trawl catcher/processors from mixing hauls or operating more than one flow scale, and would require a single point of observation. NMFS currently anticipates that, if Amendment 80 is approved, fishing would commence under Amendment 80 with the start of the 2008 fishing year. For reasons similar to those set forth in paragraphs 5 and 7 of this Declaration, the Council and NMFS included the three challenged M&E provisions, as well as additional M&E provisions, in the proposed rule for Amendment 80.

DECLARATION OF
SUSAN J. SALVESON

8

UNITED STATES DEPARTMENT OF JUSTICE
Wildlife and Marine Resources Section
Environment and Natural Resources Division
P.O. Box 7369
Washington, D.C. 20044-7369 / (202) 305-0339

12. The Council and NMFS had occasion to revisit the three GRS M&E provisions challenged by FCA during the development of Amendment 80. Rather than narrow or retract the GRS program's applicability, the Council in Amendment 80 chose to extend the GRS program's retention standards to all non-AFA trawl catcher/processor vessels, including those under 125 feet length overall. Additionally, while the proposed rule for Amendment 80 submitted by the Council would modify two GRS M&E provisions (requiring only one of the two observers onboard a non-AFA trawl catcher/processor vessel be a level 2 observer and removing the option for an alternative processing plan), the Council did not direct NMFS to modify or remove the three GRS M&E requirements challenged by FCA

13. In summary, the elimination of the three challenged M&E requirements from the GRS regulation would severely impact NMFS ability to monitor and enforce the substantive requirements developed by the Council and NMFS in the challenged GRS regulation. The elimination of the M&E requirements will jeopardize the tangible benefits sought to be achieved through the implementation of the GRS program and will jeopardize NMFS's ability to effectively and responsibly fulfill its obligations under the Magnuson-Stevens Act to minimize bycatch in the BSAI groundfish fishery to the extent practicable. Through several FMP amendments and regulatory programs – including the GRS program, the Rockfish Program, and Amendment 80 – the Council has demonstrated its commitment to ensuring that NMFS has the appropriate tools, such as the challenged M&E provisions, to effectuate and enforce the intent of the Council as expressed through these FMP amendments and regulations. FCA's request to enjoin enforcement of the three M&E provisions would upset the delicate balance successfully

DECLARATION OF
SUSAN J. SALVESON

UNITED STATES DEPARTMENT OF JUSTICE
Wildlife and Marine Resources Section
Environment and Natural Resources Division
P.O. Box 7369
Washington, D.C. 20044-7369 / (202) 305-0339

9

achieved in Amendment 79 and the GRS regulation between ensuring the responsible management of the BSAI groundfish fishery and preserving and protecting the ability of fishermen to responsibly and profitably utilize fishery resources. Furthermore, FCA's request, if granted, would be negated by the imposition of the same M&E requirements in Amendment 80 if Amendment 80 is approved by the Secretary.

Pursuant to 28 U.S.C. section 1746, I swear under penalty of perjury that the foregoing is true and correct.

*[signature]*

SUSAN J. SALVESON
Alaska Assistant Regional Administrator for
 Sustainable Fisheries
National Marine Fisheries Service

5-16-07
DATE

DECLARATION OF
SUSAN J. SALVESON

10

UNITED STATES DEPARTMENT OF JUSTICE
Wildlife and Marine Resources Section
Environment and Natural Resources Division
P.O. Box 7369
Washington, D.C. 20044-7369 / (202) 305-0339